ROY *v.* KIRN.

1. RELEASE—REPUDIATION — IMPEACHMENT — EVIDENCE — ADMISSIBILITY—RETURN OF MONEY.

Where plaintiff, in an action for personal injuries, denied ever knowingly or understandingly signing a release, or receiving any money therefor, defendant's claim that evidence impeaching the release was inadmissible because

plaintiff had not offered to return the money claimed to
have been paid cannot be sustained.

2. MOTOR VEHICLES—EVIDENCE—NEGLIGENCE—QUESTION FOR JURY.
    Evidence as to rate of speed at which defendant was driv-
        ing his automobile, and as to his intoxication, at the
        time of the accident, *held*, sufficient to carry the case to
        the jury.

3. SAME—NEGLIGENCE—DUTY TO GUEST.
    Where an owner is gratuitously carrying a guest in his
        automobile he must be mindful of the life and limb of his
        guest, and shall not unreasonably expose him to an addi-
        tional peril, a guest only assuming the risks ordinarily
        arising from riding in an automobile when the machine
        is controlled and managed by a reasonably prudent man
        who will not, by his own want of due care, increase his
        danger or subject the guest to a newly-created danger.

4. NEW TRIAL—WEIGHT OF EVIDENCE.
    It cannot be said that the verdict was overwhelmingly
        against the weight of the evidence so as to call upon
        this court to interfere with it.

5. SAME—NEWLY-DISCOVERED EVIDENCE—ABSENT WITNESS.
    The trial court was not in error in denying a motion for
        a new trial on the ground of newly-discovered evidence,
        where the record shows that the case had been at issue
        for more than a year, and in less than a month after the
        trial the whereabouts of the absent witness was discovered.

6. SAME—NOT FAVORED.
    Motions for new trials on the ground of newly-discovered
        evidence are not favored by the courts.

7. SAME—AFFIDAVITS—CONCLUSIONS.
    An affidavit for a new trial, alleging that affiant made dili-
        gent search for an absent witness, without setting forth
        the efforts made, states but a mere conclusion.

8. MOTOR VEHICLES—NEGLIGENCE—MOTOR VEHICLE LAW—DUTY TO
    GUEST.
    The provisions of the motor vehicle law (1 Comp. Laws
        1915, § 4825), providing that the owner of a motor vehicle
        shall be liable for any injury occasioned by the negligent
        operation thereof, whether such negligence consists in
        the violation of the provisions of the statutes of the State

or in failing to observe such ordinary care in such opera-
tion as the rules of the common law require, apply as
between the owner of a car driving the same and an
occupant thereof riding gratuitously as a guest.[1]

Error to Wayne; Webster (Clyde I.), J. Submitted
October 30, 1919. (Docket No. 76.) Decided Decem-
ber 23, 1919.

Case by James M. Roy against Alfred Kirn and
another for personal injuries. Judgment for plaintiff.
Defendant Kirn brings error. Affirmed.

*William J. Bane,* for appellant.

*Henry C. L. Forler,* for appellee.

STONE, J. This case was originally begun against
Alfred Kirn and Henrietta M. Glazier, there being
two counts in the declaration. The first count alleged
negligence of the defendant Kirn, and the second count
alleged negligence of defendant Glazier. Upon the
trial, and at the close of the plaintiff's evidence, the
court directed a verdict and judgment for the last
named defendant, and the trial proceeded against de-
fendant Kirn, resulting in a verdict and judgment for
the plaintiff in the sum of $2,000 damages and costs.

The first count of the declaration alleges that on
March 3, 1916, defendant owned and had in his pos-
session an automobile, and that on that date, at the
special instance and request of the said defendant, the
plaintiff became and was a passenger in, and an occu-
pant of said automobile, while being driven by said
defendant in a northerly direction on Woodward ave-
nue in the city of Detroit and the village of Highland
Park; that said defendant, in violation of his duty
and of the statute, and of the ordinances of the village
of Highland Park, drove the said automobile at a high
rate of speed, contrary to the statute of the State, and

[1]On question of liability of owner or operator of automobile
for injury to guest, see notes in 50 L. R. A. (N. S.) 1100; L. R.
A. 1916E, 1190, L. R. A. 1918C, 276.

in violation of said ordinances; that at the intersection of Grand avenue and Woodward avenue in the village of Highland Park the said defendant, while driving the said automobile at a high and reckless rate of speed, ran into and collided with the automobile belonging to the defendant Henrietta M. Glazier, which latter automobile was then and there crossing Woodward avenue at the intersection of Grand avenue; that the automobile of the said defendant ran into the said automobile of Henrietta M. Glazier with such force and violence that the plaintiff was thrown out of the car upon the pavement, suffering serious and permanent injuries, as follows: That when thrown from the said automobile to the pavement, as aforesaid, plaintiff struck on his head, fractured his skull and was otherwise injured in and about the body, arms and legs; that the injury to his skull then and there sustained was permanent and incurable, and as a result thereof his eyesight has been affected and his health permanently impaired; that he suffers as a result of the said injuries severe and painful headaches, spasms and convulsions; and because of said injuries his health is destroyed.

The plea of the general issue of the defendant Kirn was filed on June 7, 1917. At the opening of the trial, which occurred June 25, 1918, the said defendant moved to amend his plea of the general issue by giving notice of a compromise and settlement, with release, which motion was granted. Without detailing the evidence here, it is sufficient to say that there was a sharp conflict in the evidence as to the rate of speed of the car of the defendant immediately before the collision, the rate of speed varying by the testimony from 15 to 40 miles an hour; and there was evidence of the intoxication of the defendant, which was denied. A reading of the evidence satisfies us that it was sufficient upon the subject of the negligence of the de-

fendant to carry the case to the jury, and to sustain the verdict and judgment.

At the close of the plaintiff's testimony counsel for said defendant moved for a directed verdict in his favor, on the grounds that defendant owed no duty to an occupant of his car, who was not a passenger for hire, to maintain such a slow rate of speed that he might have avoided the accident when he saw the danger; that there was no evidence of a willful, malicious increasing of the danger, or the creation of a new danger. Said motion was denied and exceptions duly taken, and the defendant introduced the testimony of numerous witnesses in the case. In his defense the defendant offered in evidence two papers reading as follows:

"DETROIT, MICH., October 19, 1917.
"To whom it may concern: In the auto accident that occurred on March 11, 1916, I hold no blame whatever to Mr. Al. Kirn, and am bringing suit against Mr. Glazier, and am bringing suit only against Mr. Glazier, Mr. Kirn was at no blame whatsoever for accident.
(Signed)  "JAMES ROY."

Also the following:

"October 19, 1917.  Received of Alfred Kirn $35 for full settlement of all claims against him on account of an accident that occurred at Grand avenue and Woodward avenue, on March 3, 1916.
(Signed)  "JAMES ROY.
"Witnesses:
    "W. K. KNIPPRATH,
    "JOHN DARBY."

The defendant testified that he paid the plaintiff $35 for a release of his said claim, and that plaintiff signed the release and receipt and delivered them to him.

The plaintiff testified and offered proof to show that he had no knowledge or recollection of having signed

said papers, although he thought the signatures were his; that if he did sign them it was on an occasion, detailed by him, when he was so intoxicated that he did not know what he was doing. He also testified that he had not knowingly received any money in settlement. This testimony of the plaintiff was objected to by defendant's counsel because no offer had been made to return the $35 to the defendant, the language of counsel being as follows:

"I object to his impeaching this release for the reason that Mr. Roy has not returned the $35, and he cannot object to the contract and retain the money he has received."

This objection was overruled, and the testimony pro and con with reference to said papers and payment was received, in evidence and submitted to the jury. Upon that subject the court charged the jury as follows:

"20. If this receipt or release that has been introduced in evidence was entered into by him knowingly, that is, understandingly, knowing what it was, then he cannot recover in this action, even though he had a right of action; and you are also not concerned with the amount or the size of that release, the $35, because no matter how good an action he had, or how much money he would be entitled to recover, if he knowingly releases that right of action for $35, he has got a right to do that, and the defendant has—and the defendant is entitled to the protection of it and the plaintiff is bound by it. On the other hand, if he has a right of action against the defendant and the defendant secures the release from him through any means of fraud or because the plaintiff was intoxicated, or for any condition of the plaintiff he did not understand what he was doing, or did not know what he was doing, why then of course the release would have no binding force or effect upon him. So that you must determine that proposition in this case, as well as the other. If he knowing and understandingly executed this release he cannot recover in this action, no matter how good

a claim he has got, and your verdict should be no cause of action. On the other hand, if you believe that the release was secured from him while he was in a condition not to understand what he was doing, then he is not bound by the release and you may bring in a verdict for the plaintiff.

"21. Now, that leaves the one further—and I charge you in that regard on behalf of the defendant that a release understandingly made for a consideration is a bar to an action for the injury for which same is given. The amount paid does not affect the validity of a release."

Upon the main questions in the case the court charged the jury, in part, as follows:

"4. As to the defendant: Did the defendant do what an ordinarily prudent person would do under similar circumstances? Or, did he fail to do what an ordinarily prudent person would under similar circumstances? That is a good test. Because, if he did, then he is not liable and your verdict should be no cause of action. And if he did not do, as he approached this corner in driving this car, if he did not do or act as an ordinarily prudent person would under similar circumstances, then he is guilty of an act of negligence and the plaintiff may be entitled to recover, providing you also find the other elements that I will explain to you.

"5. Now, in this particular case, the rule, as I say, is somewhat different than in the ordinary case, because this plaintiff was either a guest or a licensee, and as I view the law, the rule is no different whether he is a guest or a licensee, so you will not have to struggle over that problem. The testimony is conflicting on that point. He says he was invited to ride. That would make him a guest. The defendant says that he invited himself. That would make him a licensee. So, of course, it is for you to determine whether he was invited to take this ride by the defendant, or whether he invited himself. One way he would be a guest and the other way a licensee. But, as I say, I do not think you need bother about which way that is, because the rule is about the same any-

208—Mich.—37.

way. In other words, the rule is, as to a guest or a licensee, that the defendant, to be liable, must do some act that either increased the danger, or created a new danger, for, if you are invited to ride in a car by a man, or if you invite yourself, either way, you assume the risks, that would naturally attach to riding in such a vehicle; that is, you know that there are certain dangers that are incident to an automobile and to riding in an automobile, and if you accept an invitation to ride, or you invite yourself, either way, you assume those ordinary risks and if an accident happens in that way then the driver is not liable to you. But if he does some act that increases those ordinary dangers, or creates a new danger entirely, then he is liable.

"6. And so as to that point in this case you have to determine that. Did the defendant Kirn do any act that increased the danger of riding in an automobile, or that created a new danger? If he did he is liable, and if he did not he is not liable.

"7. Now, if you believe the testimony of the plaintiff's witnesses, that at the time that Glazier stopped his car, and you believe that he did stop his car, on the northwest corner of Grand and Woodward to let out this man and the time he started up from there to cross the street — Woodward avenue — if you believe that the defendant Kirn in his automobile was a block away and was coming as testified to by some of the plaintiff's witnesses, from 35 to 40 miles per hour, and that when Glazier in his car had got across the street car tracks into the space on Woodward between the car tracks and the curb, that the defendant Kirn in his car had reached a point about the safety zone, or about 10 feet therefrom, and still coming at 35 or 40 miles per hour, and at that point he applied his brakes, or started to put on his brakes, and skidded 50 or 60 feet and hit this Glazier machine, and driving them both 25 or 30 feet beyond that after striking him—I say, if you believe all those facts you can find from that evidence, that the defendant Kirn did an act which increased the danger of riding in an automobile and from that you could find him liable."

"10. This rule in regard to the guest or licensee may be stated in this way: that anyone knowing that

there is always some danger in traveling in an automobile, who accepts an invitation to ride, as the guest of the driver, assumes the risk of the ordinary dangers of which he is aware and cannot hold the driver of the car responsible in damages for an accident, if there was no fault or negligence or imprudence on the driver's part. The driver's duty and responsibility is merely to be careful and avoid committing any act of negligence or imprudence that might add to or increase the ordinary danger of the occupation.

"11. In other words, Kirn's duty in reference to the plaintiff was to use ordinary care and not to increase the danger of his riding with him, or to create any new danger. One who invites another to ride is not bound to furnish a safe vehicle, or a safe horse, or a safe automobile, but if the driver fails to use ordinary care in driving the automobile, he thereby creates a new danger for which he is liable."

"23. Mr. Forler calls my attention to the fact that I stated that if he was going 15 miles per hour and did all that he could to avoid the accident that he would not be liable. I did not state the opposite of that, which, of course, would follow and be true, that if he was going 15 miles per hour and saw the car and did not do all that he should have done, all that an ordinarily prudent person would do, to avoid the accident, then, of course, he would be liable.

"24. I give the request handed to me by Mr. Forler: If Kirn was driving 15 miles and saw the other car in sufficient time to stop, it was his duty to do so, and his failure would be negligence. That is, if the other car was crossing when the Kirn car was a long distance away, it became the duty of Kirn to stop, even though he was only driving at 15 miles an hour."

There was a motion for a new trial, alleging, among other things, newly-discovered evidence then in the possession of the defendant, and which, even through the exercise of diligence, he was unable to obtain for use in said trial; that the verdict was wholly unsupported by the evidence; that the verdict and judgment were contrary to the law governing the case; and that the court erred in refusing to grant the mo-

tion of defendant for a direction of verdict in his favor.

In support of the motion for a new trial on the ground of newly-discovered evidence, the defendant offered his own affidavit of the facts which he expected to prove by one Russell J. James, concluding as follows:

"Deponent further says that such evidence has been discovered by him since the said trial, and was not previously known by this deponent to exist, and the same is material to this deponent in said cause as he is advised by his counsel. That he made diligent search for said witness but was unable to locate him."

The affidavit of Russell J. James was offered in support of said motion, which affidavit states as follows:

"I was riding south on Woodward avenue at time of collision in question; that I was about 50 feet in the rear of automobile going south; that I did not see southbound car stop on Woodward avenue; the southbound car was going at between 14 and 15 miles per hour and turned across Woodward to go east on Grand avenue; that it did not stop in crossing, but made a circular turn; that when I first saw the northbound automobile it was just about 30 feet south of Grand avenue and was skidding sideways, with front end facing across Woodward in a northwesterly direction; when I first saw the northbound automobile, the automobile crossing Woodward was on the street car track; that northbound car skidded in all about 35 feet; that when two automobiles came together they did not skid along together, but bounded apart a distance of about 10 feet and were standing that way when I walked over near them; the two cars were standing about midway between east car rail and east curb of Woodward and about the middle of Grand avenue; the driver of the northbound car did not stagger; I did not smell liquor on his breath; he was not intoxicated; there was a light snow falling; the street was slippery."

The motion for a new trial was denied, and defendant excepted. The defendant, Kirn, has brought the

case here by writ of error. The only error assigned relating to the admission of testimony was that with reference to the release and receipt. It is also claimed that the verdict was contrary to the weight of the evidence, and that the evidence was wholly insufficient to prove: (*a*) Speed at which the car of defendant Kirn was driven; (*b*) Intoxication of Kirn; (*c*) Reckless driving of Kirn; (*d*) Willful and wanton acts by defendant Kirn. Error is also assigned upon each of the foregoing paragraphs of the charge, 4, 5, 6, 7, 10, 11, 23, and 24. Error is also assigned that the court erred in overruling the motion for a new trial.

1. The assignments of error are argued by appellant's counsel and the first one is, that there being no repudiation by the plaintiff of the settlement made, evidence to impeach the release was inadmissible. We are not impressed that there is any merit in this claim. The papers were received in evidence, and the question was submitted to the jury by the trial court in its charge in a very full and explicit manner, and the jury were instructed that if the plaintiff knowingly and understandingly signed the receipt and release, he could not recover in the action. It cannot be said that there was no repudiation by the plaintiff of the settlement. He gave positive testimony that he had never knowingly and understandingly signed any such papers, or entered into any such agreement. It seems illogical to claim that he should have offered to return the $35 when he denied ever having knowingly or understandingly received the money, or any part thereof. We find no error in this branch of the case.

2. It is next urged that the evidence was insufficient to submit to the jury the question of the rate of speed at which the defendant was driving his automobile, and as to his intoxication. It is sufficient to say that there was testimony of a number of witnesses tending to show that they were so situated that they could

speak with knowledge with reference to both the subject of a high rate of speed and of intoxication; and we cannot say that the evidence was insufficient to carry the case to the jury.

3. The interesting and meritorious question in the case is as to the rule of conduct with which the defendant should be charged, it being the position of appellant that the carriage of the plaintiff was a gratuitous and social undertaking, and that, therefore, the duty owing by defendant was simply to refrain from intentional injury. Counsel for defendant has a very learned and comprehensive brief upon this subject, in which he reviews many cases, both English and American, and urges that the rule which should be applied is that, in order to hold the defendant liable in this case, it must appear that he was guilty of gross negligence. We have spent considerable time upon this question, and have reached the conclusion that the court properly submitted the case to the jury, and gave the correct rule upon the question of negligence. The question may be said to be a new one in this State. An examination of numerous cases has led us to the conclusion that the rule adopted by the Maine supreme judicial court in the case of *Avery* v. *Thompson*, 117 Me. 120 (103 Atl. 4, L. R. A. 1918D, 205, Ann. Cas. 1918E, 1122), decided February 21, 1918, is a reasonable and sane rule, and one which should be adopted by this court. After reviewing a score of cases that court said:

"The foregoing decisions give expression in varying forms to substantially the same fundamental principle and lead to the same essential inquiry, viz., Did the defendant exercise toward his invited guest that degree of care and diligence which would seem reasonable and proper from the character of the thing undertaken? The thing undertaken was the transportation of the guest in the defendant's automobile. The act itself involved some danger, because the instru-

mentality is commonly known to be a machine of tremendous power, high speed, and quick action. All these elements may be supposed to have been within the contemplation of the guest when she accepted the invitation. In a sense she may be said to have assumed the risks ordinarily arising from these elements, provided the machine is controlled and managed by a reasonably prudent man who will not by his own want of due care increase their danger, or subject the guest to a newly-created danger. In other words, we conceive the true rule to be that the gratuitous undertaker shall be mindful of the life and limb of his guest, and shall not unreasonably expose her to additional peril. This would seem to be a sane, sound, and workable rule; one consistent with established legal principles and just to both parties. It leaves the determination of the issue to the jury as a question of fact."

In reaching that conclusion the court made an exhaustive review of the authorities, and among the cases cited the following are particularly in point: *Pigeon* v. *Lane,* 80 Conn. 237 (67 Atl. 886, 11 Ann. Cas. 371); *Beard* v. *Klusmeier,* 158 Ky. 153 (164 S. W. 319, 50 L. R. A. [N. S.] 1100, Ann. Cas. 1915D, 342); *Fitzjarrell* v. *Boyd,* 123 Md. 497 (91. Atl. '547); *Perkins* v. *Galloway,* 194 Ala. 265 (69 South. 875, L. R. A. 1916E, 1190); *Mayberry* v. *Sivey,* 18 Kan. 291; *Patnode* v. *Foote,* 153 App. Div. 494 (138 N. Y. Supp. 221); *Siegrist* v. *Arnot,* 10 Mo. App. 197.

It is contended that the contrary rule was laid down by the Massachusetts court in the case of *Massaletti* v. *Fitzroy,* 228 Mass. 487 (118 N. E. 168, L. R. A. 1918C, 264, Ann. Cas. 1918B, 1088); and in discussing the conclusion reached in that case the Maine court said:

"Notwithstanding these antagonistic statements as to definition, we doubt not that the two courts, from a given state of facts, would be apt to reach the same conclusion as to liability. The difference is more verbal than real."

Our attention has been called by defendant's counsel to the case of *Jacobs* v. *Jacobs,* a case decided by the Louisiana supreme court, March 12, 1917, and reported in L. R. A. 1917F, at page 253 (141 La. 272, 74 South. 992), in which case it was held that the defendant was not guilty of any negligence, but the proper rule of liability was stated as follows:

"We agree with the learned counsel for the plaintiff, that one who invites another to ride with him as his guest in an automobile is not absolved from responsibility for negligence or imprudence, merely because he is performing a gratuitous service or favor to his guest.

"We agree with the doctrine recognized by the court of appeals of Kentucky in *Beard* v. *Klusmeier,* 158 Ky. 153, and approved by the court of appeals of Maryland in *Fitzjarrell* v. *Boyd,* 123 Md. 497, that a guest in an automobile is entitled to demand that his host shall exercise ordinary care for safety in driving the car, and that the latter's liability is not confined to acts of gross negligence or willful recklessness."

We, therefore, find no error in the charge of the court upon this branch of the case.

4. There is no claim here that any negligence of the defendant would be imputable to the plaintiff. This is not an action against third parties, but against the driver of the automobile. The authorities, already cited upon the other branch of the case, fully cover this question, especially the Maine and Louisiana cases.

5. It is urged that the verdict was contrary to the weight of the evidence. Conceding but not deciding that that question is properly here, we are not satisfied that the court erred in denying the motion for a new trial upon this ground. It cannot be said that the verdict was overwhelmingly against the weight of the evidence so as to call upon this court to interfere with it.

6. Upon the question of motion for a new trial upon the ground of newly-discovered evidence, we think

there was no error in denying the motion upon that ground, for numerous reasons. The record shows that this case had been at issue for more than one year before the trial took place. It seems that in less than a month after the trial the defendant was able to discover the whereabouts of this absent witness. It is true defendant states in his affidavit that he made diligent search for said witness, but was unable to locate him. This is a mere conclusion. The efforts made by him are not set forth, and the affidavit is far from being satisfactory upon that subject. Had a little of the diligence used after the trial been exercised during the pendency of the case for a period of one year, it would probably have resulted in finding this witness. Motions for new trials upon this ground are not favored by the courts. *Canfield* v. *City of Jackson*, 112 Mich. 120. We have set forth the substance of the affidavit of the newly-discovered witness James. Some of it is merely negative, to wit: that portion in which he says he did not see the southbound car stop on Woodward avenue. The fact that he did not see the car stop would not be very controlling or convincing as to the fact. The remainder of his affidavit relates to matters that would be purely cumulative, and we doubt if the result would have been different had the evidence been produced upon the trial.

7. It is urged by appellant that the automobile statute does not apply as between the driver of a car and an occupant thereof, but only as between the driver, or his principal, and the public. We cannot agree with this claim. Section 4825, 1 Comp. Laws 1915, reads in part as follows:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle, whether such negligence consists in violation of the provisions of the statutes of this

State, or in failure to observe such ordinary care in such operation as the rules of common law require."

Upon the whole record, and after considering all the points raised and urged by appellant, we find no reversible error, and the judgment below is affirmed.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.