### BLOUNT COUNTY, et al. v. W. W. PERRY.

Eastern Section.    March 3, 1928.

Petition for Certiorari denied by Supreme Court, May 26, 1928.

Gamble, Crawford & Goddard, of Maryville, and Roscoe Word, of Knoxville, for plaintiff in error.

Kramer & Kramer, and Brown & Johnson, of Maryville, for defendant in error.

THOMPSON, J. The plaintiff below, W. W. Perry, brought this suit to recover damages for personal injuries sustained by him in a collision between a passenger bus in which he was riding and a truck which belonged to Blount county and was being driven by A. E. Stewart. The suit was instituted against Blount county, A. E. Stewart, and R. C. Bales and W. A. Learn, a partnership doing business under the name of Bales & Learn. A demurrer was sustained as to Blount county and it went out of the litigation.

At the trial before the court and a jury, peremptory instructions were granted as to A. E. Stewart. The case was submitted to the jury upon the question of the liability of Bales & Learn. The jury found against them and rendered its verdict in favor of the plaintiff for $2500, and costs. Judgment was rendered against said Bales and Learn and in favor of plaintiff for said sum and costs. Their motion for a new trial having been overruled, Bales & Learn have appealed to this court and have assigned errors.

The first assignment makes the question that there was no material evidence to support the verdict and judgment and, therefore, that the trial court should have directed a verdict in favor of said defendants upon their motion therefor. The facts were:

Bales & Learn operated a bus between Maryville and Knoxville and carried white passengers for hire. They had a terminal at each end of the line and ran upon a regular schedule. They had a fixed rate of charges, etc., and were undoubtedly engaged as a common carrier of passengers for hire.

On the morning of March 15, 1922, the plaintiff got upon one of the defendants' busses at Maryville and became a passenger thereon and bound for Knoxville. He took a seat by the left side of the driver. This seat was in the extreme left front corner of that part of the bus in which passengers sat, and there was no door on plaintiff's side. The only door was on the front right side and the driver was, of course, between plaintiff and this door. The bus was constructed to carry fourteen passengers. The seats were constructed "crosswise" of the bus so that the passengers faced the front, and there was an aisle down its center. The seat which plaintiff took was intended for passengers, and was constantly used by passengers. On the morning of the accident there were five or six other passengers in the bus, and it left Maryville for Knoxville about 8:00 o'clock or a few minutes thereafter.

The accident happened about 8:30 o'clock at a point near Rockford and as the bus entered a sharp curve to its right—the road in the direction the bus was going being slightly uphill. The road or highway was the main thoroughfare between Knoxville and Maryville, and there was a great deal of travel on it. At the point of the accident the hard surfaced part of the road was eighteen or twenty feet wide, and on the right side of the road going toward Knoxville (the way the bus was going) there was a smooth space about three and one-half feet wide between the edge of the hard surface and the bank. This bank was from two to four feet high and the wall thereof was almost perpendicular and was smooth. The road had only recently been worked and the wall of the bank had not had time to wash or cave in and become rough or uneven. The county was still working the road at various places and its large trucks were traveling over it hauling materials, etc., which fact was known to Mr. R. C. Bales who was driving the defendants' bus at the time of the accident.

As the bus approached the sharp curve to its right where the accident happened it was in about the center of the road and was traveling thirty miles per hour or faster. A county truck which Stewart was driving was going in the opposite direction (from the direction of Knoxville toward Maryville) at a speed of about fifteen miles per

hour and was on its left-hand side of the road, i. e., the inside of the curve. It was coming around the curve and had practically gotten out of the curve when the accident happened. When the driver of the bus saw that the truck was on the wrong side of the road he pulled to his right and applied his brakes, but the left front side of the bus where plaintiff was sitting struck the left rear end of the truck, and the entire left side of the bus was ripped or cut open and plaintiff was badly injured by coming in contact with the left rear end of the truck.

Bales, the driver of the bus, testified that although he saw the truck coming while it was still some two or three hundred feet away, yet on account of the fact that the bank inside of the curve obstructed his view of the wheels of the truck he was unable to see that it was on the wrong side of the road until it was within fifty or seventy-five feet of the bus; that he then pulled to his right, put on his emergency brake and put his gears in neutral; that this caused his rear wheels to skid to the right and that both his front and rear right wheels scraped the bank on his right, thus putting his bus as far on its own side of the road as it was possible for it to go, and that he brought his bus to a stop just as the front side (not the rear) of the truck struck it. He denied that he had been running faster than fifteen or eighteen miles per hour, but he did not explain why he used his emergency or hand brake instead of his service or foot brake, and he admitted that he never at any time blew his horn. He testified that the cause of the accident was the failure of the driver of the truck to straighten it out after rounding the curve, etc.

But the plaintiff (whose version we must accept) testified in substance that the fact that the truck was on the wrong side of the road was observable for a distance of about 150 feet, that the bus did not go so far to its right that its right front and rear wheels or hubs scraped the bank, and that the truck was turning back to its right when the left front end of the bus struck its left rear end. Also there was a conflict in the evidence as to how far the bus and truck ran after the collision, and as stated, the plaintiff testified that the bus was running thirty miles an hour as it approached the sharp curve, and was in the center of the road.

An examination of the evidence leads us to believe that had the driver of the bus blown his horn and attracted the attention of the driver of the truck, or had the bus not been running so fast, or had the driver of the bus checked its speed more quickly than he did, this accident might have been avoided regardless of the fact that the truck was on the wrong side of the road and its driver may not have been upon a proper lookout and may not have seen the bus until too late to pull back onto his side of the road, and regardless of the further fact that the driver of the bus may have pulled it as far to his

right as it was possible for him to go. We are also impressed with the fact that the ,driver of the bus knew that it was very heavy and was between seven and eight feet wide, and that he also knew that the county in repairing the road was driving its heavy trucks over it and that these trucks were almost, if not quite, as wide as the bus; whereas, the road was only eighteen or twenty feet wide, and the curve into which the bus was entering was sharp and had a bank on its inside which prevented the driver of the bus from seeing the exact location of the truck on the road as it rounded the curve and approached.

Under these facts we think it was a question for the jury to determine whether the driver of the bus was guilty of negligence which was the proximate cause of plaintiff's injuries or which concurred with the negligence of the driver of the county truck as the proximate cause of said injuries. Undoubtedly the defendants were common carriers, and as such owed to the plaintiff the highest degree of care compatible with the practical operation of their bus. Notes in 4 A. L. R., 1499; 31 A. L. R., 1202; Berry on Automobiles, 4th Ed., sec. 1686, page 1427. That common carriers owe the highest degree of care to their passengers has been held many times in this State. Railway Co. v. Elliott, 1 Caldwell, 611; Railway Co. v. Kuhn, 107 Tenn., 106, 64 S. W., 202; Railway v. Newsome, 141 Tenn., 8, 206 S. W., 33.

Measured by this degree of care we think the question of the defendants' negligence in the cause at bar was clearly one for the jury, and the first assignment of error will, therefore, be overruled.

Another assignment of error quotes the first six paragraphs of the court's charge to the jury and makes the attack that the court invaded the province of the jury in that he read to the jury the first count in the plaintiff's declaration without telling them that he was reading from the declaration—thus in effect stating to the jury as facts the allegations of said count. Upon reading the charge it clearly appears that the court read to the jury all four counts of the plaintiff's declaration and that the jury saw, heard and understood that he was simply reading from the declaration and was not stating facts. We can see that the province of the jury was not invaded and this assignment will be overruled.

The question is also made that it was error to read the plaintiff's declaration to the jury, and the case of Railroad v. Anderson, 134 Tenn., 666, 185 S. W., 677, is cited in support of this contention. In that case the trial judge simply read to the jury a portion of the plaintiff's declaration (including some allegations of fact as to which there was no proof) and then told them to find in favor of the plaintiff if the greater weight of the evidence was on that side. He did not state to the jury the issues of fact or the conten-

tions of the parties. The Supreme Court held that this was error, but it did not say, as it did in regard to some of the other errors which it passed upon, that a new trial would have to be granted on account of it. In the case at bar the trial judge first read the declaration (as we have observed that a great many trial judges do) and then told the jury in his own language what the contentions or insistences of the parties were, and outlined fully to them the issues of fact which they were to try. We do not see how the defendant could have been prejudiced by the reading of the declaration. Neither do we perceive how the reading of the declaration and the stating of the contentions and issues could have unduly emphasized or magnified plaintiff's side of the case.

It is also assigned as error that the court charged the jury that, "before the plaintiff can recover he must make out his case by a preponderance of the evidence—that is the greater weight of the evidence must be in support of the plaintiff's contention—a mere preponderance, however, will be sufficient." The point of the attack is that he should not have told them that a "mere preponderance" would be sufficient, and the case of Railway & Light Co. v. Dungey, 128 Tenn., 587, 163 S. W., 802, is cited and relied upon. It is true that in the Dungey case the Supreme Court approved the dissenting opinion of Mr. Justice McFarland in Chapman v. McAdams, 69 Tenn., 500, rather than the holding of the majority to the effect that it was not error for the court to tell the jury that a "slight preponderance" was sufficient to entitle the plaintiff to recover, but it did not reverse the case on that ground. We have observed that in practically every damage case which has come before us the court has charged that a "mere" or "slight" (or some other similar word) preponderance is sufficient, and since a great many of these cases have gone to the Supreme Court without a reversal on that ground, we do not see how we could be justified in reversing the case at bar on account of what was said in the Dungey case. Moreover, in the case at bar the court in later portions of the charge in telling the jury under what circumstances the plaintiff would be entitled to recover put the burden on the plaintiff to make out his case by a preponderance of the evidence without saying anything about a mere or slight preponderance being sufficient. For all of the foregoing reasons the assignment will be overruled.

Error is also assigned to the action of the court in telling the jury that if defendants through their agent were driving the bus more than twenty miles per hour in violation of the State Statute (Acts 1905, chap. 173) they were guilty of negligence per se, and that if that negligence was the proximate cause of the accident, etc., the defendants were liable. The point of the attack is that Acts 1905, chap. 173, which limited the speed of automobiles, etc., was not passed

for the benefit or protection of a passenger on a bus as against the owner and operator of said bus. And defendants made a special request that the court charge the jury that said statute was not applicable. The request was overruled and this is also assigned as error. In Railway & Light Company v. Bettis, 139 Tenn., 337, 202 S. W., 70, and Carter v. Redmond, 142 Tenn., 262, 218 S. W., 217, it was held that in order to found an action on the violation of a statute the person suing must be such a person as is within the protection of the statute and intended to be benefited by it. But those cases were not dealing with Acts 1905, chap. 173, and in our opinion plaintiff did come within its protection. Harmon v. Barber, 247 Fed., 1, L. R. A., 1918 F, 428; Roy v. Kirn, 208 Mich., 571, 175 N. W., 475; Berry on Automobiles, 4th Ed., sec. 219, p. 218; Blashfield's Cyclopedia of Automobile Law, Vol. 1, pages 358 and 963. These assignments of error will, therefore, be overruled.

The remaining assignment of error is predicated on the refusal of the trial court to charge the jury upon the special request of the defendant as follows:

"I charge you gentlemen of the jury that the driver of the defendants', Bales & Learn's, truck had a right to assume that the driver of the Blount county truck would obey the law of the road and yield to defendants' bus one-half of the road as said trucks approached each other in order that said bus of the defendants might pass without accident."

It is true that ordinarily an automobile driver need not anticipate negligence on the part of another driver on the highway and may assume that other drivers will obey the law, but he cannot assume that the highway is clear and he must be vigilant and anticipate and expect the presence of others, and particularly so when he is driving a heavy and extremely wide bus containing passengers who have entrusted their safety to him, along a narrow road upon which he knows that other heavy, wide trucks are being operated. And, in the case at bar, as between the passenger to whom their driver owed the highest degree of care compatible with the practical operation of the bus, the defendants were not, under the facts and circumstances of this accident, entitled to a simple instruction that their driver had the right to assume that the driver of the county truck would obey the law of the road and would yield one-half of the road to him. We have examined the entire charge to the jury and, taken as a whole, we think it was fair to the defendants and that they are not entitled to a reversal on account of the refusal of the court to charge the above-quoted request.

It results that in our opinion there was no error in the judgment of the trial court and the same will be affirmed with costs.

Portrum and Snodgrass, JJ., concur.