### NAUDZIUS v. LAHR.

1. CONSTITUTIONAL LAW—STATUTES.

  Statute may not be declared unconstitutional merely because court may deem it unjust or unwise, nor unless it is in violation of applicable constitutional restrictions.

2. SAME—FUTURE TORT ACTION NOT PROPERTY RIGHT.

  Right of action for tort to happen in future is not property, and may be abrogated by legislature.

---

On liability of owner or operator of automobile for injury to guest, see annotation in 20 A. L. R. 1014; 26 A. L. R. 1425; 40 A. L. R. 1338; 47 A. L. R. 327; 51 A. L. R. 581; 61 A. L. R. 1252; 65 A. L. R. 952.

Validity of statute making owner liable for injuries by automobile being used by another, see annotation in 45 L. R. A. (N. S.) 699; 61 A. L. R. 866.

3. INFANTS—DISABILITY OF MINOR.
   Legislature may remove disability of minor to contract.

4. MOTOR VEHICLES—STATUTES—ORDINARY NEGLIGENCE—GUESTS—
   MINORS—CONSTITUTIONAL LAW.
   Act No. 19, Pub. Acts 1929, amending Act No. 302, Pub. Acts
   1915 (motor vehicle law), and abolishing right of action by
   guest for ordinary negligence of owner or operator, is not
   based on theory of contract, agency, or waiver, nor is there
   any constitutional objection rendering it inapplicable to minors.

5. INFANTS—WARD OF STATE.
   While infant is something of ward of State, it is by trust volun-
   tarily assumed and declared by State.

6. CONSTITUTIONAL LAW—FEDERAL CONSTITUTION—RIGHTS PRO-
   TECTED.
   Equality of rights protected by Michigan Constitution is same as
   that preserved by Fourteenth Amendment to Federal Constitu-
   tion.

7. SAME—MOTOR VEHICLES PROPERLY CLASSIFIED APART FROM OTHER
   VEHICLES.
   Motor car presents social, financial, and governmental problems
   which justify the legislature in reasonably classifying it apart
   from other vehicles in enactment of laws.

8. MOTOR VEHICLES—CONSTITUTIONAL LAW—STATUTES—GUESTS—
   ORDINARY NEGLIGENCE.
   Act No. 19, Pub. Acts 1929, amending Act No. 302, Pub. Acts
   1915 (motor vehicle law), and abolishing right of action by
   guest for ordinary negligence of owner or operator, is not
   unconstitutional as arbitrary class distinction between motor
   vehicles and those propelled by humans or animals, or as
   between gratuitous and paying passengers in same situation
   (Const. Mich., art. 2, § 16, Federal Constitution, 14th Amend-
   ment).

9. STATUTES—WISDOM OF STATUTE FOR LEGISLATURE.
   Whether statute will produce greater evils than those sought to
   be remedied goes to wisdom and not validity of law, and is for
   legislature and not court to consider.

10. CONSTITUTIONAL LAW—STATUTES—CLASS LEGISLATION.
   Classification need not be made to operate with mathematical
   nicety, and is not invalid because in practice it results in some
   inequality.

11. STATUTES—IMMEDIATE EFFECT.

If subject of statute given immediate effect by legislature has real and substantial relation to public peace, health, or safety, all doubt should be resolved in favor of legislative judgment that it is "immediately necessary" within meaning of Constitution (article 5, § 21).

12. SAME—PUBLIC SAFETY—IMMEDIATE EFFECT.

Statute which tends to discourage collusion and fraud in litigation is obviously pertinent to public safety, and court may not say, beyond doubt, that it was not immediately necessary to that end (Const. Mich., art. 5, § 21).

13. SAME—TITLE OF ACT—MOTOR VEHICLES—GUESTS—ORDINARY NEGLIGENCE.

Title of motor vehicle law (Act No. 302, Pub. Acts 1915) being sufficient to cover provisions as to conditions and remedies of civil liability, Act No. 19, Pub. Acts 1929, amending said act and abolishing right of action by guest for ordinary negligence of owner or operator is not unconstitutional as embracing subject-matter not expressed in title (Const. Mich., art. 5, § 21).

14. SAME—CONSTRUCTION—ORDINARY NEGLIGENCE—GUESTS—WORDS AND PHRASES—GROSS NEGLIGENCE.

Objection that terms "gross negligence" and "wilful and wanton misconduct," as used in Act No. 19, Pub. Acts 1929, abolishing right of action by guest for ordinary negligence of owner or operator of motor car, are so uncertain as to render act inoperative is not tenable; said terms being familiar in legal nomenclature and having often been defined and discussed by courts.

15. PLEADING—DECLARATION—NEGLIGENCE—GROSS NEGLIGENCE.

Declaration charging that defendant requested his brother, 17 years old, to drive motor car, knowing that brother was inexperienced, unskilful, and incompetent to drive; that brother drove at excessive rate of speed, and, by reason of inexperience, lack of skill, and incompetency, lost control of car, resulting in injury to plaintiff, does not charge more than ordinary negligence.

16. MOTOR VEHICLES—NEGLIGENCE.

One may be guilty of negligence who permits an incompetent person to drive an automobile, especially when owner remains in car and fails to protest against reckless driving.

17. PLEADING—NEGLIGENCE—GROSS NEGLIGENCE.

To constitute charge of gross negligence or wanton or wilful misconduct, facts lifting owner's faults above ordinary negligence must be set out.

18. SAME—NEGLIGENCE—GROSS NEGLIGENCE—GUESTS.

In action by guest against owner of automobile, declaration charging negligence in allowing incompetent brother to drive and that he drove at excessive speed, charges no more than ordinary negligence, and plaintiff's right to recover is therefore barred by Act No. 19, Pub. Acts 1929.

19. MOTOR VEHICLES—NEGLIGENCE—GROSS NEGLIGENCE—GUESTS—PROXIMATE CAUSE—STATUTES.

Even if automobile owner's negligence in permitting incompetent brother to drive, resulting in injury to guest passenger, was gross negligence, it would not be actionable under Act No. 19, Pub. Acts 1929, if driver was guilty of no negligence or was guilty of only ordinary negligence, since defendant's prior gross negligence would not be proximate cause, not having had any effect on accident.

20. SAME—PLEADING—GROSS NEGLIGENCE—PROXIMATE CAUSE.

In action by guest against owner of automobile for negligence in allowing incompetent brother to drive, resulting in injury to plaintiff, declaration must properly charge defendant's fault both as gross negligence or wanton and wilful misconduct and as proximate cause of accident or charge driver with gross negligence or wanton and wilful misconduct causing injury, in order to recover under Act No. 19, Pub. Acts 1929.

McDONALD, J., dissenting in part.

Certiorari to Kent; Brown (William B.), J. Submitted October 22, 1930. (Docket No. 129, Calendar No. 35,052.) Decided January 23, 1931.

Case by Albina Naudzius, a minor, by her guardian, and also as assignee, against Allen Lahr for personal injuries received while riding in defendant's automobile as a guest passenger. Defendant reviews order denying motion to dismiss by certiorari. Reversed.

*John J. Smolenski* (*William K. Clute,* of counsel), for plaintiff.

*Dilley & Dilley* (*Brown, Kelley & Warner,* of counsel), for defendant.

*Rodgers & Dunn* and *Dunham, Cholette & Allaben,* as *amici curiæ.*

FEAD, J. Plaintiff is 16 years old. Her declaration charges that on August 18, 1929, while she was riding as a gratuitous passenger in defendant's automobile on the highway, she was injured as a consequence of defendant's negligence, both ordinary and gross. Defendant moved to dismiss the declaration on the ground that it did not charge actionable gross negligence, and that defendant was not liable for ordinary negligence because of Act No. 19, Pub. Acts 1929, amending Act No. 302, Pub. Acts 1915 (3 Comp. Laws 1929, § 4648), for the regulation of motor vehicles and their operators upon the highways, by adding to the section declaring the civil remedies for injury, the proviso:

"Provided, however, That no person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

The act was given immediate effect; otherwise its effective date would have been August 28, 1929. Plaintiff contends both that the act is uncon-

stitutional and it could not constitutionally be given immediate effect. The circuit court held with plaintiff on both contentions and denied defendant's motion.

Plaintiff claims the act violates the following constitutional provisions:

"All political power is inherent in the people. Government is instituted for their equal benefit, security and protection." Constitution of Michigan, art 2, § 1.

"No person shall be   *   *   *   deprived of life, liberty or property, without due process of law." Constitution of Michigan, art. 2, § 16. See Constitution of United States, Am. 14.

"Nor shall any State   *   *   *   deny to any person within its jurisdiction the equal protection of the laws." Constitution of United States, Am. 14.

In view of the argument, we again call attention to the rule that a statute cannot be declared unconstitutional merely because the court may deem it unjust or unwise, nor unless it is in violation of applicable constitutional restrictions. *Burrows* v. *Delta Transportation Co.,* 106 Mich. 582 (29 L. R. A. 468); *Daugherty* v. *Thomas,* 174 Mich. 371 (45 L. R. A. [N. S.] 699, Ann. Cas. 1915A, 1163); *Bowerman* v. *Sheehan,* 242 Mich. 95 (61 A. L. R. 859).

Plaintiff contends:

(1) The abolition of the right of action for ordinary negligence deprives plaintiff of a right of property without due process of law.

A right of action for a tort to happen in the future is not property, and may be abrogated by the legislature. *Mackin* v. *Detroit-Timkin Axle Co.,* 187 Mich. 8; *Wall* v. *Studebaker Corp.,* 219 Mich. 434; 12 C. J. p. 972; *Silver* v. *Silver,* 280 U. S. 117 (50 Sup. Ct. 57, 65 A. L. R. 939).

(2) Plaintiff's remedy for tort cannot be abolished because, being a minor, she could not relieve defendant from liability on the ground of contract or agency.

The legislature may remove the disability of a minor to contract (*Wall* v. *Studebaker Corp., supra*); but the instant act is not based on any theory of contract, agency, or waiver. It operates of its own force as an exercise of legislative power. While the infant is something of a ward of the State, it is by a trust voluntarily assumed and declared by the State, and counsel have cited or stated no authority or principle which, under our Constitution, indicates that the legislature is restricted in making such laws applicable to minors as well as adults.

(3) The act establishes unreasonable, arbitrary, and unlawful classes of persons having immunity under the statute and of persons deprived of remedy, in distinguishing:

(a) Between motor cars and vehicles propelled by humans or animals.

(b) Between gratuitous and paying passengers in the same situation.

The equality of rights protected by our Constitution is the same as that preserved by the Fourteenth Amendment to the Federal Constitution. [*In re Fox's Estate,* 154 Mich. 5. The standards of classification are:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause

merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78 (31 Sup. Ct. 337, Ann. Cas. 1912C, 160).

It would be threshing old straw to discuss the accepted fact that the motor car has presented social, financial, and governmental problems which justify the legislature in reasonably classifying it apart from other vehicles in the enactment of laws. [ L. R. A. 1918D, 134, note.

A few courts have held that, where no statute permits it, a gratuitous passenger may not recover against his host except for gross negligence or wilful misconduct. *Massaletti* v. *Fitzroy*, 228 Mass. 487 (118 N. E. 168, L. R. A. 1918C, 264, Ann. Cas. 1918B, 1088); *Epps* v. *Parrish*, 26 Ga. App. 399 (106 S. E. 297); *Saxe* v. *Terry*, 140 Wash. 503 (250 Pac. 27); 20 A. L. R. 1018, note; 61 A. L. R. 1254, note.]

Can a state of facts be conceived which would form a reasonable basis for the classification at bar?

Generally, gratuitous passengers are relatives or friends. Exceptionally, they are mere acquaintances, invited chance pedestrians, or those who deliberately solicit rides. Since the rule of liability was announced in *Roy* v. *Kirn*, 208 Mich. 571, there has been considerable litigation between guests and hosts. Some between husband and wife or other close relatives has found its way to this court. [*Harvey* v. *Harvey*, 239 Mich. 142; *Riser* v. *Riser*,

240 Mich. 402; *Farthing* v. *Hepinstall*, 243 Mich. 380. In many, probably most, of the cases between relatives or friends, the real defendant is an insurance company. Ordinary negligence is not hard to prove if guest and host co-operate to that end. It is conceivable that such actions are not always unattended by collusion, perjury, and consequent fraud upon the court. While we may accept the contention that paid insurers are not objects of special consideration by the legislature, it is inadmissible for the court to consider a law from the viewpoint that they are not entitled to a proper trial and honest determination of liability in a lawsuit. Nor are insurance companies alone interested in the question. The results of verdicts are mirrored in insurance rates, and the law provides a possible reason in the purse of the motor owning public, most of whom carry liability insurance. It is not inconceivable that some passengers who solicit rides may manufacture claims for liability. Groups of young folks, engaged upon a joint enterprise of social enjoyment in a borrowed car, have been known to combine to charge the owner for an accident. The law also has social features. It is well known that drivers hesitate to take neighbors for a ride or to assist on his way a weary traveler because of potential liability for injuries. Few, if indeed any, of these features seem to have manifested themselves in the use of other vehicles than motor cars. Perhaps the legislature also had other reasons for the law. In view of the abundance of personal injury litigation from the operation of motor cars and the conditions readily conceivable as pertinent to the relation of guest passenger in them, which litigation and conditions seem to be substantially absent from the use of other vehicles, it cannot be said that the classifica-

tion at bar was arbitrary and without reasonable basis.

Whether the feared evils of the act will produce carelessness in driving and overshadow the evils sought to be remedied by it goes to the wisdom, not the validity, of the law, and is for the legislature, not this court, to consider. The legislature has the right to experiment to attain a desired result.

In *Silver* v. *Silver*, 280 U. S. 117 (50 Sup. Ct. 57, 65 A. L. R. 939), in sustaining a similar statute as not in violation of the Fourteenth Amendment, the court said:

"As the record does not disclose the constitutional grounds on which the appellant challenged the validity of the statute, our review will be limited to the single question arising under the Federal Constitution which was considered in the opinion of the court below.  *  *  *  We need not, therefore, elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.  *  *  *

"The use of the automobile as an instrument of transportation is peculiarly the subject of regulation. We cannot assume that there are no evils to be corrected or permissible social objects to be gained by the present statute. We are not unaware of the increasing frequency of litigation in which passengers carried gratuitously in automobiles, often casual guests or licensees, have sought the recovery of large sums for injuries alleged to have been due to negligent operation. In some jurisdictions it has been judicially determined that a lower standard of care should be exacted where the carriage in any type of vehicle is gratuitous.  *  *  * Whether there has been a serious increase in the evils of vexatious litigation in this class of cases,

where the carriage is by automobile, is for legislative determination and, if found, may well be the basis of legislative action further restricting the liability. Its wisdom is not the concern of courts.

"It is said that the vice in the statute is not that it distinguishes between passengers who pay and those who do not, but between gratuitous passengers in automobiles and those in other classes of vehicles. But it is not so evident that no grounds exist for the distinction that we can say *a priori* that the classification is one forbidden as without basis, and arbitrary.      *      *      *

"Granted that the liability to be imposed upon those who operate any kind of vehicle for the benefit of a mere guest or licensee is an appropriate subject of legislative restriction, there is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none.      *      *      *      In this day of almost universal highway transportation by motor car, we cannot say that abuses originating in the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles do not present so conspicuous an example of what the legislature may regard as an evil, as to justify legislation aimed at it, even though some abuses may not be hit.      *      *      *      It is enough that the present statute strikes at the evil where it is felt, and reaches the class of cases where it most frequently occurs."

The classification of passengers upon the payment of fares also has a basis in reason. The distinction between paying and gratuitous service is recognized in other branches of the law, "as, for example, between the gratuitous bailee and the bailee for hire, the common carrier and the private carrier, and innkeeper and the ordinary social

host." *Silver* v. *Silver*, 108 Conn. 371 (143 Atl. 240, 65 A. L. R. 943).

Our statutes differentiate in many ways between a commercial vehicle in which passengers are carried for hire and a private car used for the owner's personal business or pleasure. The classification, then, amounts, in substance, to one between passengers in commercial and private vehicles. When the relations between car owner and purchaser are on a money basis, collusion between them to manufacture a case would be exceptional; at least, it would not be likely to become so common as to be a general practice or public evil. An isolated instance of gratuitous passenger riding in a commercial car or a paying guest in a private car is not fatal to the law under the rule that the classification need not be made to operate with mathematical nicety and is not invalid because in practice it results in some inequality.

As evil may be conceived which the act tends to remedy, the classification cannot be said to be arbitrary but must be held to have a basis for legislative action. To repeat:

"It is enough that the present statute strikes at the evil where it is felt, and reaches the class of cases where it most frequently occurs." *Silver* v. *Silver*, 280 U. S. 117 (50 Sup. Ct. 57, 65 A. L. R. 939).

(4) That the act could not constitutionally be given immediate effect because it was not "immediately necessary for the preservation of the public peace, health or safety." Constitution of Michigan, art. 5, § 21.

It is not the province of the court to attempt to accurately ascertain and adjudicate the immediate

necessity of the terms of the particular act, but if the subject of the law has a real and substantial relation to public peace, health, or safety, all doubt will be resolved in favor of the legislative judgment that it is "immediately necessary." *Attorney General* v. *Lindsay,* 178 Mich. 524; *People* v. *Urcavitch,* 210 Mich. 431; *People* v. *Stambosva,* 210 Mich. 436; *Newberry* v. *Starr,* 247 Mich. 404, 407.

"Public safety has to do not only with the safety and protection of persons, but also of their property." *Industrial Bank* v. *Reichert,* 251 Mich. 396, 400.

"Laws in regard to 'public safety' are allied in their application to those enacted to promote the public peace, preserve order and provide that security to the individual which comes from an observance of law." *State, ex rel. Pollock,* v. *Becker,* 289 Mo. 660, 705 (233 S. W. 641).

An act which tends to discourage collusion and fraud in litigation is obviously pertinent to public safety and we cannot say, beyond doubt, that it was not immediately necessary to that end.

(5) That the amendment is broader than the title, and is void as a law embracing more than one object to be expressed in the title. Constitution of Michigan, art. 5, § 21.

The original law was entitled:

"An act to provide for the   *   *   *   regulation of motor vehicles   *   *   *   upon the highways of this State and of the operators of such vehicles," etc.

The title is sufficient to cover provisions as to the conditions and remedies of civil liability. *Flower* v. *Witkovsky,* 69 Mich. 371, 375; *Jasnowski* v. *Board of Assessors,* 191 Mich. 287.

(6) That the terms "gross negligence" and "wilful and wanton misconduct" are so uncertain as to render the act inoperative.

The terms are familiar in legal nomenclature and often have been defined and discussed by the courts. *Simon* v. *Railway*, 196 Mich. 586; *Montgomery* v. *Booming Co.*, 88 Mich. 633, 644 (26 Am. St. Rep. 308); *Gibbard* v. *Cursan*, 225 Mich. 311; *Lett* v. *Summerfield & Hecht*, 239 Mich. 699. The point is untenable. *People* v. *McMurchy*, 249 Mich. 147. We think the act is constitutional and was legally given immediate effect. The remaining question is as to the charge of gross negligence in the declaration.

The gross negligence charged against defendant was that he requested and caused his brother Clarence to drive the car, knowing that Clarence was 17 years old and an inexperienced, unskilful, and incompetent person to drive an automobile. It further charged that defendant remained in the car, that Clarence was driving at an excessive rate of speed, and, by reason of his inexperience, lack of skill, and incompetency, he lost control of the car, it left the pavement and went into the ditch, injuring plaintiff. The declaration does not charge Clarence with more than ordinary negligence.

One may be guilty of negligence who permits an incompetent person to drive an automobile, especially when the owner remains in the car and fails to protest against reckless driving. *People* v. *Ingersoll*, 245 Mich. 530. To constitute a charge of gross negligence or wanton or wilful misconduct, the facts lifting the owner's faults above ordinary negligence must be set out. Such facts are not stated in this declaration and the charge here made against the defendant is no more than ordinary negligence.

However, we think the declaration is insufficient for another reason. The statute is specific in eliminating ordinary negligence as a basis of liability and requiring the actionable gross negligence or wilful or wanton misconduct to be a proximate cause of the accident. Even if defendant's negligence in permitting Clarence to drive was gross, it would not be actionable if Clarence was guilty of no negligence. *Riser* v. *Riser, supra.* Upon the same reasoning, if the accident was caused only by ordinary negligence on the part of the driver, defendant's gross negligence in permitting him to drive could not have been a proximate cause of the injury. In other words, if Clarence's ordinary negligence be eliminated as a cause, defendant's prior gross negligence had no effect upon the accident.

The declaration must properly charge defendant's fault both as gross negligence or wanton and wilful misconduct and as a proximate cause of the accident or Clarence with gross negligence or such misconduct causing the injury.

The order of the circuit court will be reversed and one entered dismissing the declaration, with leave to file a new one within 15 days, with costs to defendant.

BUTZEL, C. J., and CLARK, POTTER, SHARPE, and NORTH, JJ., concurred with FEAD, J. WIEST, J., concurred in the result.

McDONALD, J. (*dissenting in part*). I concur with my Brother, Justice FEAD, in holding that the act in question is constitutional and should be sustained, but I cannot concur in his conclusion that it was competent for the legislature to give it immediate effect.

In section 21, art. 5, of the Michigan Constitution, it is provided:

"No act shall take effect or be in force until the expiration of ninety days from the end of the session at which the same is passed, except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety, by a two-thirds vote of the members elected to each house."

When this provision was considered by the constitutional convention of 1907 and 1908, the following explanation of its purpose was made by Mr. Holmes, speaking for his committee:

"*Mr. Holmes:*    *    *    *    This section has been somewhat changed from the original, with a view of preventing so many measures going through the legislature and being given immediate effect. The committee has provided in this section that only in cases of absolute emergency shall any bill be given immediate effect, and then only by a two-thirds vote of each house." 1 Constitutional Debates, pp. 194, 195.

By adopting this provision, the people intended to stop the practice of giving immediate effect to acts by merely a two-thirds vote which was permitted under the earlier Constitution; and to restrict the authority of the legislature solely to acts "making appropriations and acts immediately necessary for the preservation of the public peace, health or safety."

It is the duty of this court to see to it that this plain mandate of the people is obeyed by the legislature. *Attorney General* v. *Lindsay,* 178 Mich. 524.

It will be noted from the language used in the constitutional provision that, to justify the giving of

immediate effect to an act, it is not sufficient that it be necessary to preserve the public peace, health, or safety, but it must be "immediately necessary," and, as explained by those who framed it, "immediately necessary" was intended to mean the existence of an "absolute emergency."

There must have been an impending, immediate danger to the public peace, health, or safety which the legislature intended to avert by giving immediate effect to this statute. I do not understand my Brother to claim that giving it immediate effect was necessary to preserve the public peace or health, but he does claim that an absolute emergency existed as to public safety which made it necessary for the legislature to take immediate action; that, if the statute had been allowed to take the usual course and become effective 90 days from the close of the legislative session, something would have happened to injure the public safety. The act was passed in 1929 and up to that time we had managed to get along very well as the law then was without serious injury to the public safety. Some may have thought that the law was unfair to the owners and operators of automobiles in holding them liable to guest passengers, but no one seems to have had the remotest idea that it was destructive of the public safety until the legislature so declared. In his effort to sustain the legislature, my Brother indulges in various fanciful speculations as to what may have been in the legislative mind, but fails to point out any constitutional reason for its action. It may be true that they saw an Indian behind every tree ready to tomahawk the public, but that would not be sufficient reason for giving this act immediate effect, because it bears no relation to the public safety. Its purpose was not to avert a threatened

danger to the public. Its purpose, as shown by the act itself, was to relieve automobile owners and operators from liability for ordinary negligence while transporting guest passengers. If the purpose had been to increase their liability, and thereby afford greater protection to the people, it might be said that the act bears some relation to public safety. But in view of its plain purpose and intended effect, it is ridiculous to contend that it does. It has no more to do with public safety than has the rule in Shelley's case. But going beyond the constitutional requirements, my Brother considers the act as a safety measure from the standpoint of public morals. In concluding his argument, he says:

"An act which tends to discourage collusion and fraud in litigation is obviously pertinent to public safety and we cannot say, beyond doubt, that it was not immediately necessary to that end."

His reference to collusion and fraud, upon which his conclusion rests, seems to be based upon the following statement, which shows a misunderstanding of the facts:

"Since the rule of liability was announced in *Roy* v. *Kirn,* 208 Mich. 571, there has been considerable litigation between guests and hosts.  *  *  *  It is conceivable that such actions are not always unattended by collusion, perjury, and consequent fraud upon the court."

In the first place, the statement that "there has been considerable litigation between guests and hosts" since the case of *Roy* v. *Kirn, supra,* is not borne out by the records of this court. *Roy* v. *Kirn* was decided 12 years ago, and from that time to the present my Brother is able to cite but four cases involving litigation by guest passengers. Four cases in 12 years, even though attended by collusion,

fraud, and perjury, are hardly sufficient to create an "absolute emergency" involving the public safety. Further, what right has this court to assume that actions by guest passengers are attended by collusion, fraud, and perjury. There is no justification for any such assumption appearing in or outside of the record. But there is no need to speculate on public morals. In determining the right of the legislature to give immediate effect to this act, we need not go beyond a consideration of the act itself, which is expressive of the legislative intent and purpose. Its purpose was not to avert a danger immediately threatening public safety. There existed no constitutional reason for giving it immediate effect.

Retaining, as I do, the most profound respect for the judgment of my learned associate, I am compelled, nevertheless, in this case to dissent, sincere in the belief that, if his opinion on the constitutionality of the immediate effect clause of the statute were adopted, it would establish a harmful precedent in that it would eliminate for all useful purposes the constitutional restriction placed on the legislature's authority to give immediate effect to its acts and would permit it to ride at will over the plain mandate of the people as expressed in their Constitution.

The act itself is valid, and as it is now in effect by reason of the expiration of 90 days from the close of the legislative session, the immediate effect provision is only important for its bearing on the rights of the plaintiff in the instant case. The circuit judge was wrong in holding the act invalid. He was right in holding that the legislature was without authority to give it immediate effect. As he reached the right result in denying the motion to quash, the judgment should be affirmed, and the case remanded for trial.