No. 21,371.

THOMAS WALKER, *Appellant*, v. EDWARD FAELBER, *Appellee*.

SYLLABUS BY THE COURT.

1. MOTORCYCLE—*Operation on Public Highway—Construction of Statute.* Chapter 65 of the Laws of 1913, making it unlawful for any person to operate a motorcycle on a public highway outside of a town or village at a greater rate of speed than twenty-five miles per hour, was intended solely for the protection of others using such highway.

2. SAME — *Motorcycle Exceeding Speed Limit — Frightening Team in Adjacent Field—No Liability under Statute.* The defendant operated a motorcycle along a public highway at a rate of forty miles per hour. In a field adjacent to the highway the plaintiff's team attached to a binder became frightened at the noise of the exhaust on the defendant's machine, ran away, and injured the plaintiff. In an action to recover for the injuries on the ground that the defendant was liable under the statute, *held*, the court rightly sustained a demurrer to the evidence.

Walker v. Faelber.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed March 9, 1918. Affirmed.

*G. A. Spencer,* and *A. R. Buzick, jr.,* both of Salina, for the appellant.

*Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from a judgment sustaining a demurrer to the plaintiff's evidence.

The plaintiff was engaged in harvesting grain in a field adjoining a public highway, and was using a binder drawn by four horses. The defendant passed along the public highway on a motorcycle, moving at a rate of forty miles an hour. The plaintiff claimed that his horses became frightened from the noise of the exhaust or muffler on the motorcycle and ran away, breaking the binder to which they were hitched, injuring one of the horses so that it died, and throwing the plaintiff from the seat of the binder, resulting in his injuries. It was the plaintiff's contention that the defendant was wantonly reckless and negligent in traveling at such a rate of speed on the highway with the exhaust of the motorcycle open. The action was sought to be maintained on the theory that plaintiff was entitled to recover by reason of the provisions of section 7 of chapter 65 of the Laws of 1913, which reads in part as follows:

"No person shall operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the conditions of the road, nor at a rate of speed such as to endanger the life or limb of any person; provided that a rate of speed in excess of twenty-five miles an hour shall be presumptive evidence of driving at a rate of speed which is not careful and prudent in case of injury to the person or property of another."

The statute has been amended and the limit of speed outside towns and villages fixed at forty miles per hour (Laws 1917, ch. 74, § 5), but the act of 1913 was in force and effect at the time of plaintiff's injury. The plaintiff testified that he had not heard any noise except that made by the binder, but saw something pass on the highway like a streak, when the horses gave a jump, threw up their heads, and started to run. The evidence showed that the horses attached to another binder four or five

rods in front of the one plaintiff was operating were not affected by the noise of the motorcycle.

The defendant's contention, which was upheld by the trial court, is that the statute was enacted solely for the protection of persons using the public highways. The title of the act shows that it relates to automobiles and other motor vehicles "regulating their use and operation upon the streets and highways." Section 7 forbids any person to "operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the conditions of the road," or "at a rate of speed such as to endanger the life or limb of any person." In another part of the same section, defining the rate of speed at which such vehicles shall be operated within any city or village, it is declared that "no motor vehicle shall be operated at a speed greater than twelve miles an hour or at a rate of speed greater than is reasonable and proper, and having regard for the traffic and use of the road, and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person." In this section, also, the person operating a motor vehicle is required to reduce the speed to a rate not exceeding eight miles an hour upon approaching railroad crossings and intersections of highways, or a bridge or a sharp curve or a steep descent, or upon approaching "another vehicle or an animal or person outside of any village or city," and there the rate of speed is limited to eight miles an hour until the person is "entirely past such intersection, bridge, curve, descent, vehicle, animal or person." Section 8 of the act makes it the duty of the person operating such motor vehicle, "at request or on signal by putting up the hand, from a person riding or driving a restive horse or other draught or domestic animal," to bring such motor vehicle "immediately to a stop," and "if traveling in the opposite direction to "remain stationary so long as may be reasonable to allow such horse or animal to pass."

In section 9 the act requires the motor vehicle to be equipped with good and sufficient brakes and with a suitable bell, horn or other signal, and to exhibit "during the period from one-half hour after sunset to one-half hour before sunrise, one or more lamps, showing white lights visible within a reasonable

distance from the direction toward which such vehicle is proceeding, and a red light visible from the reverse direction."

We think it is obvious that the trial court's construction of the statute is the correct one. The legislative purpose was to protect a distinct class of persons, that is, users of public highways. The safety of a person in a field adjoining a public highway was not within the contemplation of the legislature. The requirement of a bell or horn and the use of signals and of lamps in front and in the rear, and the giving of signals from the direction towards which such vehicle is proceeding, and a different signal visible from the rear, could only have been intended for the protection of persons traveling on the highway. The duties imposed by law upon the driver of a motorcycle require him to keep his eyes upon the road and to look ahead for the purpose of protecting other persons using the public highway from probable injury resulting from fast driving or other negligence. Since the statute imposed upon defendant no duty to the plaintiff, the evidence failed to show negligence. It is only where the defendant wrongfully fails to perform some duty owed to the plaintiff that a cause of action based upon negligence can exist. (*Tawney v. Railway Co.*, 84 Kan. 354, 114 Pac. 223; *Denton v. Railway Co.*, 90 Kan. 51, 133 Pac. 558.) Moreover, there was no evidence tending to show that a motorcycle running at forty miles an hour would make any more noise, or be any more likely to frighten a horse in an adjoining field, than one running at twenty-five miles an hour, which was the rate of speed allowed by the statute. Counsel for the plaintiff admit they have not been able to find any case or precedent directly in point, and we have found none, but on the general principles upon which actions for negligence are based, we are satisfied that the plaintiff cannot recover.

The judgment is affirmed.