WILSON v. MOUDY et al.—123 S. W. (2d) 828.

Middle Section. August 6, 1938.

Petition for Certiorari Denied by Supreme Court, January 21, 1939.

Charles Willett, of Springfield, for plaintiff in error Moudy.

A. L. Dorsey, of Springfield, guardian ad litem, for plaintiff in error Edwards.

O. H. Ellis, of Springfield, for defendant in error Wilson.

FAW, P. J. This is an appeal by William Moudy and Ralph Edwards, defendants below (and hereinafter called defendants), from a judgment for $10,000 and costs against them and in favor of Miss Evelyn Wilson, the plaintiff below (and hereinafter called plaintiff).

The "appeal" in this case "must be construed to mean an appeal in error," as a simple appeal does not lie from a judgment in an action at law. Spalding v. Kincaid, 1 Shan. Cas. 31; Manley v. City of Chattanooga, 1 Tenn. App. 65.

Plaintiff's suit for $25000 as damages for personal injuries was brought in the Circuit Court of Robertson County on September

15, 1936, against William Moudy and Dudley McMurry, and plaintiff filed a declaration, in three counts, at the time the summons issued.

On September 27, 1936, defendants Moudy and McMurry filed a plea of the general issue—not guilty—to the first count, and a, demurrer to the second and third counts, of plaintiff's declaration.

Thereafter, by order of the Court, made on motion of the plaintiff, Ralph Edwards was made a party defendant, and it appearing that said Edwards was a minor, A. L. Dorsey, a member of the Robertson County Bar, was appointed guardian ad litem to defend the suit for said minor defendant, and the plaintiff, by leave of the Court, amended her declaration by inserting the name of Ralph Edwards at certain specified places in each of the three counts of the declaration and adding a fourth count thereto, and thereupon defendant Ralph Edwards, through his said guardian ad litem, filed a demurrer to the plaintiff's declaration.

At the February term 1937, the Court overruled the aforesaid demurrers of the defendants, to which action of the Court the defendants reserved exceptions, and all of the defendants filed pleas of not guilty to plaintiff's declaration as amended.

Upon the issues thus made, the case was tried before Judge Fort and a jury at the June term 1937, but at the close of the plaintiff's proof in chief the Trial Judge, on motion of defendant Dudley McMurry, directed the jury to return a verdict of not guilty as to said defendant, which was accordingly done. There was no exception to the aforesaid peremptory instruction in favor of defendant McMurry, and the propriety of the verdict in his favor is not questioned in this court.

Upon evidence and argument of counsel on behalf of plaintiff and the defendants (Moudy and Edwards), respectively, and the charge of the Court, the jury found the issues in favor of the plaintiff and against defendants Moudy and Edwards, and assessed the plaintiff's damages at $10,000, and judgment was entered accordingly.

Defendants Moudy and Edwards filed separate motions for a new trial, which were overruled by the Court, and thereupon said defendants prayed, and were granted, an appeal to this court, and each of them perfected his appeal by filing the oath prescribed for poor persons, and a joint bill of exceptions was filed in due season by the defendants.

It appears from the bill of exceptions that a motion for a directed verdict on behalf of defendant Edwards was made at the close of the plaintiff's evidence in chief and renewed at the close of all the evidence. There was no motion for a directed verdict on behalf of defendant Moudy.

It appears from undisputed evidence that the plaintiff, Miss Eve-

lyn Wilson, suffered serious and permanent personal injuries about 12:30 o'clock A. M. on February 6, 1936, as the result of the "wrecking" of an automobile in which she was riding with defendants Moudy and Edwards. The automobile overturned, and, in the act of overturning, it struck a telephone pole, or post, with such great force as to demolish and "wreck" the automobile so completely that no attempt was ever made to repair it. The automobile was a "1935 Ford Coupe," owned by, and registered in the name of, Dudley McMurry, defendant below, who was the grandfather of defendant Ralph Edwards, and the latter borrowed the car from his said grandfather several hours before the "wreck," and he and his intimate friend and associate, defendant Moudy, drove to the home of plaintiff in Springfield, where plaintiff entered the car and the three of them drove to Coopertown, seven or eight miles from Springfield. Plaintiff was defendant Moudy's "date" for the evening in question, and defendant Edwards had a "date" with Miss Frey, a young lady at Coopertown.

The respective ages of the plaintiff and defendants Moudy and Edwards, at the time of the collision and injuries to plaintiff, were, in the order named, as follows: Plaintiff twenty-two years, Moudy twenty years and Edwards eighteen years.

When the trio reached Coopertown, Miss Frey got in the coupe, and the four young people first went to a basket ball game at or near Coopertown, and then drove to Oakhurst Inn at Springfield to get some soft drinks and something to eat, after which they drove back to Miss Frey's home at Coopertown, where the others left Miss Frey and then drove back to Springfield, and the collision in and by which plaintiff suffered the injuries for which she sued in this case occurred on a street near the corporate limits of the municipality of Springfield shortly after midnight.

Defendant Edwards drove the car to Coopertown and return to Springfield on the first of the two trips, and, on leaving Oakhurst Inn, defendant Moudy took the wheel and drove the car to Coopertown and return to Springfield on the second trip, and was driving at the time the car overturned against, and collided with, the telephone pole, as aforesaid.

Before proceeding further with the statement of the facts supported by some material evidence (for this is as far as we need to go in stating the facts), it will be well to ascertain the averments of the plaintiff's declaration upon which she sought to predicate her claim that negligence of the defendants was the proximate cause of her injuries. Where the declaration avers specific acts or omissions of the defendants which would in law constitute actionable negligence, it will avail the plaintiff nothing to prove other and different negligent acts or omissions. East Tennessee Coal Co. v. Daniel, 100 Tenn., 65, 42 S. W., 1062; Elkin Motor Co. v. Ragland,

6 Tenn. App., 166, 171; Smith v. Fisher, 11 Tenn. App., 273, 291, and other cases there cited.

The fourth count of plaintiff's declaration is as follows:

"The Plaintiff, Evelyn Wilson a citizen and resident of Springfield, Robertson County, Tennessee, sues the defendants, William Moudy, Dudley McMurry, and Ralph Edwards, a minor under the age of twenty one years, citizens and residents of Springfield, Robertson County, Tennessee, for Twenty Five Thousand ($25,000.00) Dollars damages and for cause of action states:

"The Defendant, Dudley McMurry, was on March 6th, 1936 the owner of one certain Ford Coupe Automobile and the same was registered in his name in the County Clerk's Office of Robertson County, Tennessee under License No. 311-645 for the year 1935.

"On said date and at said time more specifically hereinafter set out the defendant, Ralph Edwards, a grandson of the said Dudley McMurry, was using said automobile, as the agent, servant and employee of his grandfather and with his consent and permission.

"On the aforesaid date at or about 12:30 o'clock A. M., the plaintiff, while in the exercise of ordinary care for her own safety, was riding in the aforesaid automobile as the invited guest of the defendants, which was being driven by the defendant, William Moudy, as agent, servant and employee of the defendant, Ralph Edwards and Dudley McMurry, in an easterly direction on Highway No. 49 approaching the City Limits of Springfield, Tennessee, and under the direct supervision, direction and control of the defendant, Edwards, who was in the car and sitting on the seat with the defendant Moudy and the plaintiff.

"The Plaintiff refers to the statement of facts contained in the First Count of her declaration and the grounds of negligence and statements of injuries, losses, and damages therein alleged, and adopts the same as fully as though incorporated herein, haec verba, and further states that the defendant, Ralph Edwards, to whom the care and custody of the car was intrusted had and it was the duty and power of supervising, directing, and controlling the operation of the said automobile while being driven by the defendant William Moudy, but failed or refused to do so at the foresaid time and carelessly and negligently allowed the defendant William Moudy, to operate the said automobile carelessly, heedlessly, recklessly and in a negligent and unlawful manner and without being vigilant and watchful for the safety of the plaintiff and others, all of which was the direct or proximate cause of the aforesaid accident.

"Plaintiff alleges that all of her said injuries, losses, sufferings and damages resulted directly and proximately from the negligence of the defendants as aforesaid, and for all of which she sues the defendants and each of them for Twenty Five Thousand

($25,000.00) Dollars damages and demands a jury to try this cause.''

The ''grounds of negligence'' averred in the first count of plaintiff's declaration and adopted, by reference, as a part of the fourth count, are as follows:

''Plaintiff was riding in said automobile as the invited guest of the defendants. On the aforesaid date at or about 12:30 o'clock A. M. the plaintiff, while in the exercise of ordinary care for her own safety, was riding in the aforesaid automobile which was being driven by the defendant, William Moudy, in an easterly direction on 49 approaching the city limits of Springfield, Tennessee, under the direction and control of the defendants Ralph Edwards and Dudley McMurry. The defendant Moudy after coming through a narrow underpass started down a long hill just prior to entering the City limits, suddenly speeded up the said automobile, sped down the hill at a high rate of speed, and in a negligent and unlawful manner, without exercising proper care and caution and without being vigilant and watchful for the safety of plaintiff and others while travelling at this high rate of speed, attempted to round a curve as he continued up the opposite hill, after entering the city limits, lost control of the said automobile and struck the curbing on the left-hand side of the street, continued up the hill at a high rate of speed, glancing against the curbing on said left-hand side at various points for a distance of approximately Four Hundred Fifty (450) Feet and finally careened across the road to the righthand side of the street near the top of said hill where said automobile turned over on its right-hand side and crashed into a telephone pole located near the edge of the street, striking the automobile about the front part of the cab, crushing said cab top down upon the plaintiff, the defendant William Moudy and Ralph Edwards, a grandson of the defendant Dudley McMurry, who was riding in the car with them at the time of the collision, and supervising, directing, and controlling the operation thereof.

''As a direct and proximate result of the automobile being thus unlawfully carelessly and negligently operated by the defendant, the plaintiff was badly, seriously and permanently injured.''

(Then follows a detailed and lengthy statement in the declaration of the injuries suffered by plaintiff on the occasion in question.)

There is material and substantial evidence in the record which, the verdict implies and we must assume, was accepted by the jury as the truth of the case, that supports the above stated averments of the declaration with respect to the alleged negligence of defendants Moudy and Edwards.

We think the seemingly frank and straightforward testimony of defendant Moudy himself is sufficient to prove the above

stated averments of the declaration with respect to his negligence.

Defendant Moudy testified that he drove the car from Coopertown to the point in Springfield where the collision occurred; that they left Coopertown about twelve o'clock (midnight) and on that trip he drove "pretty fast." His description, on his examination in chief, of the manner in which the accident occurred is embraced in the following excerpts from his testimony:

"Q. Just in your own way tell the jury how the accident occurred? A. We came around a curve at the bottom of the hill and there was a car parked on the right—our right coming toward Springfield—We were driving fast and the back of the car hit the curb on the left and we went on up the hill and hit the curb again and then we went across and hit the pole.

"Q. That car has a cab in front? A. Yes, sir.

"Q. Do you know why the car left the road? A. No. sir.

"Q. What did it do when it left the road? A. I don't know.

"Q. You say there was a curve coming toward Springfield? A. Yes, sir.

"Q. The automobile you speak about was parked how? A. The front end was pointed into the curb.

"Q. Where was the back end? A. Out in the street.

"Q. How much clearance was there to pass that car? A. I don't know.

"Q. Haven't you any idea? How came you to swing into the curb on the left-hand side of the road as you came by that car? A. I took the outside instead of the inside.

"Q. State whether or not you were trying to avoid the car? A. I didn't want to hit the car on the inside.

"Q. When you did that did you think you were going to collide with the curb? A. After the car hit everything happened so fast I didn't know what was happening."

We quote additional brief excerpts from the cross-examination of defendant Moudy as follows:

"Q. You admit now you were driving too fast? A. Yes.

"Q. Were you driving in excess of twelve miles per hour? A. I reckon so.

"Q. The fact is that when you hit the bottom you were making 85 or 90 miles per hour? A. I don't know.

"Q. The light was on where you could see the speedometer? A. No, sir. . . .

"Q. You say Miss Wilson didn't tell you she was getting in a hurry to go home and to drive fast? A. No.

"Q. You drove the car at a rapid rate of speed on the way in? A. Yes.

"Q. Do you mean you were driving that car negligently? A. I don't think so.

"Q. You didn't have any wrecks or near wreck, until you came to the underpass? A. No, sir.

"Q. That is a narrow underpass, is it not Bill? A. Yes.

"Q. I here show you a picture marked no. 2. Does that purport to be a fairly good likeness of that underpass as it existed at that time? A. Yes.

"Q. That is a narrow underpass? A. Yes.

"Q. It would be impossible for two cars to go through it meeting each other at the same time? A. I don't know. I never saw two do that.

"Q. You never saw two try? A. No, sir.

"Q. There is a slight curve that leads into that underpass? A. Yes.

"Q. And after you get through it there is another curve down the hill to the city limits? A. Yes.

"Q. It is necessary that you take that underpass at a pretty moderate rate of speed or you can't get through it? A. Yes.

"Q. After you got through it you stepped on the gas? A. Yes.

"Q. How much gas did you give it? A. I don't know.

"Q. Didn't you just give it all it would take down that hill? A. I don't think so.

"Q. Don't you know that you were going so fast that when you saw that automobile you couldn't stop that car until you hit that pole up the hill? A. No.

"Q. Did you apply your brakes going up that hill? A. No. I was giving it the gas.

"Q. You gave it the gas going down the hill and going up the opposite hill on which the accident occurred? A. Yes.

"Q. You say there was an automobile down there on the right-hand side of that hill you were going up? A. Yes.

"Q. Do you know how wide that street is at the place you claim that car was parked? A. No.

"Q. Isn't this true: With the car parallel to the curb. Is that the way? This way? A. Not exactly.

"Q. How far were the wheels out from the curb? A. Three or four feet from the curb—the back wheels.

"Q. The front wheels were against the curb? A. Yes.

"Q. I will ask you if it isn't true: That from the back end of that car to the other side of the street—if there isn't enough room for two cars to meet and pass? A. Yes, I guess so.

"Q. And that is the car you claim you were trying to avoid? A. Yes.

"Q. Had it not been for the fact that you stepped on the gas after you got through the underpass and drove so swiftly down that hill that this accident would have been avoided? A. I don't know.

"Q. Would it have been possible for you to have passed that car parked there, had you been driving in a proper manner? A. Yes, I guess it would. . . .

"Q. Then you continued on up the hill glancing against that curb. Did you apply the brakes? A. I don't know.

"Q. In other words you were driving so fast you don't know what happened? A. I don't know.

"Q. Were you giving it the gas? A. I think so.

"Q. Do you know at about what rate of speed you were going? A. No. . . .

"Q. You were asked by Mr. Ellis about whether you were going too fast or not. What did you mean by that? A. I was going too fast to make the curve with the car on the inside of it like it was. . . .

"Q. After you got through the underpass, you say you suddenly shot down that hill? A. We picked up speed.

"Q. After you got through that underpass and speeded up at a rapid rate of speed, how far was it from there, approximately, to the pole you crashed against? A. I don't know.

"Q. It was down one hill and up another? A. Yes.

"Q. You were traveling at such a rate of speed that the impact caused it to crash the cab down on the occupants of the car? A. It crashed the cab in.

"Q. What became of the car afterwards? A. I don't know.

"Q. Did they have it repaired and use it again? A. I don't think so.

"Q. You haven't seen them with that automobile? A. No, sir.

"Q. They don't own a car of that type now? A. No, sir.

"Q. The car was practically demolished? A. Yes, sir.

"Q. Mr. Dorsey asked you if it wouldn't have been worse to have put on the brakes than to have put on the gas and you said it was better to put on the gas— A. I said I thought it would.

"Q. Is that a sharp curve down there? A. Pretty sharp. . .

"Q. You are trying to tell the Court that as you suddenly came around the curve that there was a car that pulled across? A. There was one there.

"Q. You are not trying to tell the Court that you came upon it suddenly? A. No, sir, not suddenly.

"Q. Your lights were good and they were burning? A. Yes."

Defendant Moudy lived in Springfield and had been driving automobilies for ten or eleven years. He was well acquainted with the place where the collision occurred and its surroundings.

The defendants filed separate assignments of error in this Court, but some of their assignments are directed to the same point.

## The Demurrers.

The plaintiff sought to base the second count of her declaration upon averments that, at the time of said accident, said automobile was being operated by the said defendants on a street or highway, State of Tennessee, "carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, and without due caution and circumspection, at a speed and in a manner so as to endanger or be likely to endanger any person or property, all of which was contrary to and in disregard of section 2681 of the 1934 (1932) Code of the State of Tennessee."

Said section 2681 of the Code reads as follows:

"It shall be unlawful for any person to drive any vehicle upon a highway carelessly and heedlessly in willful or wanton disregard of the rights or safty of others, or without due caution and circumspection at a speed and in a manner to endanger or be likely to endanger any person or property."

And in the third count of her declaration plaintiff averred that "the said defendants were operating said automobile within the city limits and on the city streets of Springfield, Tennessee, in excess of Twelve (12) miles per hour all of which was contrary to and against City Ordinance No. 138, Section 17, Book No. 1 of the Ordinances for the city of Springfield."

Defendant Moudy demurred to the second and third counts of plaintiff's declaration, asserting in his demurrer that speed laws and ordinances were designed and enacted for the protection of persons and property outside of the automobile, and the plaintiff as an occupant of the automobile is not within its protection.

The first and second grounds of the demurrer of the defendant Edwards are predicated upon the same proposition advanced in the demurrer of defendant Moudy, supra.

Through defendant Moudy's first assignment of error he complains of the action of the trial court in overruling his demurrer. Defendant Edwards did not assign error upon the action of the trial court in overruling the first and second grounds of his demurrer. He has assignments of error directed to the action of the court on parts of his demurrer, but they are specifically confined to the propositions presented by other and distinct grounds of his demurrer.

But defendant Moudy's first assignment of error presents for our consideration the proposition that "speed laws" are not for the protection of guests in automobiles.

The general principle which defendant Moudy is seeking to invoke by his first assignment of error is that, one not the beneficiary of a statute may neither base an action nor defense thereon. This is a well-established rule. Chattanooga Railway & Light Co.

v. Bettis, 139 Tenn., 332, 202 S. W., 70; Carter v. Redmond, 142 Tenn., 258, 218 S. W., 217; Walker v. Faelber, 102 Kan., 646, 171 P. 605, L. R. A. 1918D, 569, 570.

But the question now under consideration is, whether or not speed laws are for the protection of guests in offending automobiles, as well as for the protection of persons and property outside of such automobiles. This question has been answered in the affirmative in the following cases: Blount County v. Perry, 7 Tenn. App., 340, 346 (certiorari denied by Supreme Court); Harmon v. Barber, 6 Cir., 247 F. 1, L. R. A., 1918F, 428, 432, certiorari denied by U. S. Supreme Court, 246 U. S. 666, 38 S. Ct. 335, 62 L. Ed., 929; Fairchild v. Fleming, 125 Minn., 431, 147 N. W., 434, 438; Roy v. Kirn, 208 Mich., 571, 175 N. W., 475, 480; Singer v. Martin, 96 Wash., 231, 164 P. 1105, 1108.

For defendant Moudy it is sought to differentiate the Tennessee case of Blount County v. Perry, supra, from the instant case, on the ground that, in the Blount County Case the plaintiff was a passenger for hire in a bus operated by a common carrier who owed a higher degree of care to its passenger than the operator of a private automobile owes to his guest. We are unable to see wherein this constitutes a differentiating fact on the point under consideration.

In the brief for defendant Moudy much reliance seems to be placed on the case of Reed v. Ridout's Ambulance, 212 Ala. 428, 431, 434, 102 So. 906.

In 42 C. J., pp. 1061, 1062, section 811, it is said:

"According to some authorities a passenger in an automobile is entitled to the benefit and protection of a statute fixing a speed limit, either absolutely or as prima facie evidence of lack of due care, but there is also authority for the view that such statutes are intended only for the benefit of other users of the highway and not for the benefit of occupants of the speeding automobile."

For support of the proposition first stated in the last quotation above, Corpus Juris cites four of the cases we have cited above; but for the proposition that there is authority for the view that such statutes are not for the benefit of the occupants of the speeding automobile, only one case is cited, viz., the Alabama case of Reed v. Ridouts Ambulance, supra. An examination of the opinion in the Alabama case, supra, discloses the fact that the court there predicated its conclusion upon a finding that the plaintiff in that case was an employee of the defendant and a fellow servant of the driver of the ambulance in which the plaintiff was riding when he was injured, and that he was, for that reason, not entitled to recover. It seems obvious that the Alabama case, supra, is not an authority in the instant case.

We think the weight of authority and sound reason support the

conclusion that laws limiting the maximum speed of automobiles on the highways are for the protection of guests in speeding automobiles, as well as for the protection of persons and property outside of such automobiles; and defendant Moudy's first assignment of error is overruled.

We may add here this further statement: In the court below, the Court and counsel for all parties treated the Code section 2681 (on which the second count of plaintiff's declaration purports to be based) as though it were a statute altering the common law of this State, and treated section 17 of the Traffic Ordinance of Springfield pleaded in the third count of plaintiff's declaration likewise. All counsel have so treated said Code section and Ordinance in their assignments of error, briefs and arguments in this court, and we have proceeded upon this assumption in disposing of defendant Moudy's first assignment of error. Williamson Bros. v. Daniel, 21 Tenn. App. 346, 110 S. W. (2d) 1028, 1029, and other authorities there cited.

However, we are inclined to the opinion that section 2681 of the Code of 1932 is merely declaratory of the existing common law in this State. 5 Am. Juris., page 543, section 45; Id., page 646, sec. 260; Annotation, 26 A. L. R. 905.

The Ordinance of the city of Springfield pleaded in the third count of plaintiff's declaration simply provided that, "no vehicle shall exceed twelve miles an hour." It is provided by section 2682 of the Code that, "no person shall drive a motor vehicle at such a speed as to endanger the lives or property of others; provided, that any municipality shall have the authority to prescribe a maximum rate of speed within its corporate limits of not less than fifteen miles per hour, except at school or hospital zones, or in turns at street intersections, where a lower maximum rate of speed may be prescribed."

We interpret section 2682, supra, as, in effect, forbidding municipal corporations in this State to prescribe a maximum rate of speed of less than fifteen miles per hour, with specified exceptions which are not found in the Ordinance here involved.

But we do not think the second and third counts of plaintiff's declaration are material to the result in this case, as the general verdict returned by the jury may well be referred to the fourth count, which there was evidence to support. Code, sec. 8824; Tenn. Cent. Railway Co. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452.

Through his ninth assignment of error defendant Edwards complains of the action of the court below in overruling the third, fourth, fifth, sixth and seventh counts of his demurrer.

The sixth ground of defendant Edwards' demurrer is that, "the declaration taken as a whole does not state a cause of

action against this defendant, Ralph Edwards.'' This is too general and indefinite to constitute a good demurrer. ''All demurrers shall state the objection relied on'' (Code, sec. 8784); hence, demurrers must be specific in stating the reasons why the declaration does not state a cause of action against the defendant. Higgins and Crownover's Tennessee Procedure, sec. 544, and numerous cases cited in notes under section 8784 in Williams Annotated Code (Vol. 6, page 199). See also Bowen v. Metropolitan Life Insurance Co., 17 Tenn. App., 322, 67 S. W. (2d), 164, 166, 167, and cases there cited.

Through the third and fourth grounds of his demurrer, defendant Edwards asserts that the declaration, as amended, is ''repugnant,'' in that, (1) it first alléges that the automobile was being driven by Moudy under the direction and control of both McMurry and Edwards, and then alleges that it was being driven under the supervision, control and direction of Edwards; and (2) that it alleges that Moudy, the driver, was the agent and servant of McMurry, owner; that the plaintiff, Miss Wilson, was riding as their guest, and that, therefore, Edwards owed her no duty and could not be held liable under such allegation.

As before stated, the action was first instituted against William Moudy and Dudley McMurry, and it was averred in the original declaration that Dudley McMurry was the owner of said automobile and it was driven by his agent, servant and employee, the defendant William Moudy, and plaintiff was riding in said automobile as the invited guest of the defendants (Moudy and McMurry). Thereafter, and before the issues were made up, Ralph Edwards was made a party defendant and the declaration was amended by inserting his name after that of Dudley McMurry as a defendant. But the declaration was subsequently further amended by the addition of a fourth count thereto in which Moudy, McMurry and Edwards were all named as defendants, and it was averred therein that McMurry was the registered owner of the said automobile; that Edwards, a grandson of said McMurry, was using said automobile as the agent, servant and employee of his grandfather and with his consent and permission, and that while plaintiff was riding in the aforesaid automobile as the invited guest of the defendants, which was being driven by the defendant William Moudy, as the agent, servant and employee of Ralph Edwards and Dudley McMurry, and ''under the direct supervision, direction and control of the defendant Edwards, who was in the car and sitting on the seat with the defendant Moudy and the plainiff.''

It is no objection to a declaration that the relations between the parties which give rise to the cause of action are stated differently in different counts. In Tennessee Procedure, section 360, it is said: ''The greatest advantage in the use of more than

one count will be found in those cases where the relations between the parties are difficult of legal classification. For instance, it may be a hard matter to determine whether a defendant is a partner, a joint adventurer or a technical agent, and whether he is individually liable or chargeable in some representative capacity. Counts predicated upon these various relationships give the plaintiff the benefit of every conceivable theory."

We do not think it should be assumed that the pleader intended to, or did, incorporate, by reference, in the fourth count of the present declaration the averments of the first count, concerning the relations of the parties, which were inconsistent with the specific additional averments of the fourth count. Otherwise the purpose and design of separate counts in a declaration on a single cause of action would be thwarted. We are of the opinion that the fourth count of the declaration states a cause of action against the three defendants therein named, without "repugnance" in its averments.

The seventh count of the demurrer of the defendant Edwards is as follows:

"Defendant Ralph Edwards, a minor, is not shown to be the owner of the automobile in question or the agent and servant of the owner thereof, or to have been engaged himself in the operation of the automobile at the time in question, and was not guilty of any tort or wrong, but, on the other hand, the defendant Moudy is shown to have been the operator of said automobile and guilty of the negligence and conduct complained, and that he was operating the same under the direction of Dudley McMurry, the owner thereof, and as agent and servant of the owner; wherefore, the plaintiff, a guest of the defendants Moudy and McMurry, could not hold this defendant liable for the wrongs and injuries of the defendants Moudy and McMurry, or either of them. He must under the facts alleged, have himself been guilty of some active negligence or conduct."

This latter ground of demurrer overlooks the averments in the fourth count of the declaration that plaintiff was riding in the aforesaid automobile as the invited guest of the "defendants" (which included defendant Edwards), and that Moudy was driving the automobile "under the direct supervision, direction and control of the defendant Edwards, who was in the car and sitting on the seat with the defendant Moudy and the plaintiff."

"Where the automobile is under the control and direction of the other occupant, and he has a right to control and direct it, whether he exercises the right or not, an occupant other than the owner or driver may be liable for the negligence of the driver." Blashfield's Cyclopedia of Automobile Law, Permanent Edition, Vol. 5, pages 303, 304, section 3132.

██ And the rule last stated applies to a minor who has reached the age of accountability for his torts. Thrasher v. Bratton, 6 Higgins 454, 6 Tenn. Civ. App. 454; Wilson v. Mullen, 11 Tenn. App. 319, 337. Defendant Edwards' ninth assignment of error is overruled.

## Contributory Negligence.

Defendant Moudy's second assignment of error, and defendant Edwards' third, fifth and fourteenth assignments of error, are based upon the refusal of the Trial Judge to give in charge to the jury certain instructions specially requested by said defendants on the subject of contributory negligence of the plaintiff.

██ In the briefs for defendants, this defense is sometimes termed "assumed risk," and at other times "contributory negligence." "Assumed risk and contributory negligence are distinct doctrines of the law and are not synonymous." 45 C. J., page 944, section 503.

"In strictness, the technical doctrine of 'assumption of risk' applies perhaps only to the contractual relation of master and servant, but one frequently finds in opinions of the courts the expression 'assumption of risk' as the practical equivalent of the term 'contributory negligence.' " Bouchard & Sons Co. v. Keaton, 9 Tenn. App., 467, 481, citing 20 R. C. L., page 109, sec. 95.

As said by Special Judge Moss (speaking for the Western Section of this Court) in Gargaro v. Kroger Grocery & Baking Co., 118 S. W. (2d) 561, 564: "The doctrine of assumed risk, sometimes (as in Hatch v. Brinkley, 169 Tenn., 17, 80 S. W. (2d), 838), referred to as incurred risk, is usually applied to contract cases growing out of the relation of master and servant, but such is not always the case. The application of the doctrine is often simply another way of applying the rule of contributory negligence, and frequently the difference between the two is merely a difference in the choice of language or style of expression. In other words, the fact that one knows of potential danger and voluntarily subjects himself thereto may and often does render him contributorily negligent if accident or injury ensues."

The instructions given the jury on the subject of the effect of contributory negligence on the part of the plaintiff, are embraced in excerpts from the court's charge as follows:

"The theory of the defendants is that neither of them was guilty of any negligence or recklessness which proximately caused the plaintiff's injury; that if they were guilty of any recklessness or negligence, the plaintiff was fully aware of it, made no protest and thereby participated in such recklessness and negligence. If you believe this theory to be true then you should find for the defendants. . . .

"If you find from a preponderance of the evidence that the negligence of the defendant William Moudy proximately caused the injury to the plaintiff and that the plaintiff was not guilty of any negligence which proximately contributed to her injury then you should find for the plaintiff and against the defendant William Moudy. If you find from a preponderance of the evidence that the defendant Ralph Edwards had the custody and control of the car; that the plaintiff was riding in the car as his guest, and that he directed or permitted the defendant William Moudy to drive it and that while so driving it he was guilty of negligence which proximately caused the injuries to the plaintiff, then both the defendants would be liable to the plaintiff, provided the plaintiff was not guilty of any negligence which proximately caused her injuries or proximately contributed to the cause of her injuries.

"One who is riding as a guest in the car of another is required to take every reasonable precaution which an ordinarily prudent person would take to protect herself against injury and a failure to do so would defeat a recovery for an injury caused by the negligence of the driver of the car or the person who has control and directing of the car."

Relating to contributory negligence of the plaintiff, we think the charge thus given was clear, free from error, and sufficient under the proof in this case.

In the case of Hatch v. Brinkley, 169 Tenn. 17, 80 S. W. (2d) 838 (upon which defendants seem to place much reliance), Mrs. Brinkley, a guest in the car of Hatch, was injured as the result of alleged negligent driving of Hatch. Mrs. Brinkley testified that she had been driving with Hatch, as his guest, frequently for four or five years, and that she knew that he was not a good driver, but was habitually a careless driver, and, notwithstanding this knowledge, she continued to ride with him.

In the instant case, plaintiff testified that she had been in an automobile many times when defendant Moudy was driving, and that she "felt perfectly safe when Bill" (defendant Moudy) "was driving;" that she "thought he was a good driver;" that as they returned from Oakhurst Inn to Coopertown on the night the accident occurred, "Bill said they were late and speeded up," and she (plaintiff) asked him not to drive fast and he "slowed down;" that when plaintiff saw the light on the "underpass" just before the accident, the car was going at "just a moderate rate of speed;" that about that time defendant Moudy "stepped on the gas" and plaintiff said: "Bill, please don't go fast," but defendant Edwards said nothing at that time about driving fast, and that the next thing plaintiff remembers was when she awoke in Vanderbilt Hospital.

Defendant Moudy was an experienced driver, and there is no

proof that plaintiff had any reason to regard him as a reckless or careless driver, or that his previous manner of driving had been such as to give him the reputation of, or to characterize him as, a reckless or careless driver.

■ Defendant Moudy's second, and defendant Edwards' third, fifth and fourteenth assignments of error are overruled.

It results from what we have said in disposing of the assignments of error last discussed that the fifth assignment of defendant Moudy is also overruled. Said assignment is that, ''the entire evidence shows that the plaintiff had ridden with the defendants in the automobile on three former trips before the one of the wreck between Springfield and Coopertown, on the same night, at the same rate of speed as on the last trip, without objection upon her part.''

## Negligence of Moudy.

Defendant Moudy's third assignment is that ''there was no evidence of gross negligence on the part of the defendant Moudy to the plaintiff, his guest, the Supreme Court of Tennessee having greatly relaxed the rule as to the duty owed by the driver of an automobile to his guest.''

This assignment seems to be predicated upon a paragraph in the opinion in Hatch v. Brinkley, supra, page 29, 80 S. W. (2d), page 842, as follows: ''In these guest cases there has been so much abuse of hospitality that the tendency has been to restrict rather than to extend the rule as to the liability of a host to his guest. The Massachusetts, Georgia, Washington, and Wisconsin courts limit recovery to cases of gross negligence, and statutes adopting that rule have been passed in a number of states.''

■ ■ But the established rule in Tennessee, stated in Tennessee Cent. Railway Co. v. Vanhoy, 143 Tenn. 312, 335, 226 S. W. 225, 231, and approved in Schwartz v. Johnson, 152 Tenn. 586, 592, 280 S. W. 32, 47 A. L. R. 323, and other cases, reported and unreported, by the Supreme Court and this court, is that, ''One who invites another to ride in his automobile must exercise ordinary care not to increase the danger of such undertaking, or create a new danger, and will be liable to the person so invited for injuries caused by his failure thus to exercise ordinary care for his guest's safety;'' and we find nothing in Hatch v. Brinkley, supra, which purports to abrogate this rule. It was, therefore, not essential that the proof show ''gross negligence'' of defendant Moudy. Proof of a failure on his part to exercise ordinary care for the safety of the plaintiff in the circumstances was sufficient. Defendant Moudy's third assignment of error is overruled.

Defendant Moudy's sixth assignment is that ''The evidence nowhere showed negligence upon the part of the defendant Moudy

as the driver of the automobile, negligence not being established 'simply because there was a wreck.' "

As we have hereinbefore stated, we think the evidence, including the testimony of defendant Moudy himself, abundantly shows that the "wreck" was caused by his negligence. Of course, if this assignment was well-founded, it would inure to the benefit of defendant Edwards also; but in the brief for defendant Edwards it is conceded that "the wreck was caused by the negligence of Moudy." Defendant Moudy's sixth assignment is overruled.

### Was Moudy's Negligence Imputable to Edwards?

It is the theory of defendant Edwards that the negligence of defendant Moudy is not imputable to him (Edwards); and this is the fundamental proposition upon which he undertakes to predicate his first, second, fourth and eighth assignments of error.

The first, second and eighth assignments of defendant Edwards do not conform to the Rule of this Court which requires that "When the error alleged is upon the charge of the court, the part complained of, whether it be instructions given or instructions refused, shall be set out." See Appendix to 155 Tenn., page XII. The Supreme Court has the same Rule. Id. page V.

The importance and value of the above quoted rule is illustrated by the first assignment of defendant Edwards, wherein it is stated that "The Trial Court erred in instructing the jury, in effect, that defendant Ralph Edwards and defendant Moudy occupied toward each other the respective relations of principal and agent in the operation of the automobile;" whereas the instruction given to the jury on the point involved in said assignment is as follows: "If you find from a preponderance of the evidence that the defendant Ralph Edwards had the custody and control of the car; that the plaintiff was riding in the car as his guest, and that he directed or permitted the defendant William Moudy to drive it and that while so driving it he was guilty of negligence which proximately caused the injuries to the plaintiff, then both the defendants would be liable to the plaintiff, provided the plaintiff was not guilty of any negligence which proximately caused her injuries or proximately contributed to the cause of her injuries."

In other words, the first assignment contains counsel's interpretation of the charge, and not the language of the Trial Court, which it is necessary for the appellate court to interpret for itself.

An assignment of errors in the appellate court is in the nature of a pleading, framed under rules prescribed by the court (Wood v. Frazier, 86 Tenn., 500, 8 S. W., 148; Cheatham v. Pearce, 89 Tenn., 668, 681, 15 S. W., 1080); and it is easy for counsel of the known ability and learning of the counsel in this case to conform

376

to these Rules, one of which, in the present instance, seems to have been overlooked, doubtless by inadvertence.

The second assignment of defendant Edwards is that: "The Court erred in (a) not peremptorily instructing the jury to return a verdict in favor of the defendant Ralph Edwards, because the material facts of the case are undisputed and defendant Ralph Edwards being a minor and guilty of no negligence himself and the facts not making out a case wherein there should be an exception made to the general rule that a minor could not be held for the tort of another as his agent, it became a matter of law for the decision of the trial Judge and not the jury and he should have granted the motion; or, (b) having refused to peremptorily instruct the jury, the trial Court should have instructed the jury that Moudy's negligence could not be imputed to Edwards or that Edwards himself must himself have been guilty of negligence before plaintiff could recover of him, which he did not do, though requested so to do."

The proposition on which this assignment is predicated is in conflict with the ruling of this court in Wilson v. Mullen, 11 Tenn. App., 319, 337 (in which certiorari was denied by the Supreme Court), wherein it was held that, since the creation of an agency involves a contract and a minor cannot lawfully appoint an agent, it is the general rule that a minor may not be made liable for the tortious acts of one to whom he has undertaken to delegate authority to act as his agent; but that the rule last stated does not apply where the driver of an automobile was acting in the immediate presence and subject to the direction of the minor who had authority to control his operation of the car.

In the instant case, there is substantial evidence that defendant Edwards had borrowed the car in question and was in possession and control thereof as a gratuitous bailee, at the time plaintiff was injured, and had a right to grant or withhold permission of Moudy to drive the car and had the right to direct and control the manner in which it was driven by Moudy. The right to control is the test. 5 Am. Juris., page 782, section 494; 1 Berry on Automobiles (6 Ed.), sec. 642, page 511.

We are of the opinion that the facts of the instant case bring it directly within the authority of the ruling in Wilson v. Mullen, supra, and it is therefore unnecessary to discuss the numerous authorities from other jurisdictions cited by learned counsel for Edwards. The first, second, fourth and eighth assignments of defendant Edwards are overruled.

### Emergency.

The sixth assignment of defendant Edwards complains of the action of the Trial Court in refusing to give to the jury the

third request of defendant Edwards; but this assignment merely states the substance of the request and does not set it out as required by the Rules. However, we have examined said request in the transcript and, as we understand it, it involves the proposition that, if negligent acts of Moudy, proximately causing plaintiff's injuries, were so sudden or quick that Edwards could not have prevented them, plaintiff could not recover of Edwards. This is inconsistent with the doctrine of imputed negligence applicable to this case. Defendant Edwards' sixth assignment is overruled.

## Joint Enterprise.

 The seventh assignment of defendant Edwards complains of the refusal of the Court to charge his Request No. 4, which request is merely stated "in substance" in the assignment; but, as thus stated, the request was unsound, in that, it involved the proposition that the negligence of Moudy could not be imputed to Edwards if the three occupants of the car were engaged in a ride for their common pleasure and enjoyment at the time of the wreck, and Moudy was not driving the car exclusively for the benefit and on a mission for Edwards. The common pleasure and enjoyment of the occupants of the car is not the test of a joint enterprise, or adventure. "In a joint enterprise, in order to impute the negligence of one of the parties to the other, each must have authority to control the means or agencies employed to execute the common purpose. . . . The relation between them must be shown to be something more than host and guest, and the mere fact that both have engaged in the drive because of the mutual pleasure to be so desired [derived] does not materially alter the situation." Schwartz v. Johnson, 152 Tenn., 586, 590, 591, 280 S. W., 32, 33, 47 A. L. R., 323, supra. The seventh assignment of defendant Edwards is overruled.

## Sufficiency of Evidence.

 The tenth assignment of defendant Edwards is that, "There was no evidence upon which the jury could predicate a verdict, or at least, the evidence greatly preponderated against the verdict of the jury."

We have hereinbefore found that there was evidence upon which the jury could predicate a verdict for the plaintiff. The assertion that the evidence greatly preponderated against the verdict "presents no question that can be considered by this court." Illinois Cent. Railroad Co. v. Abernathey, 106 Tenn., 722, 728, 64 S. W., 3, 4. The tenth assignment, supra, is overruled.

## Verdict against Charge.

Defendant Edwards' eleventh assignment is that, "The verdict

of the jury is against the charge of the court." It appears that it was intended by this assignment to assert, in substance, that there is no evidence which, under the law as charged, supports the verdict, and, assuming, as we hold, that the law was properly charged, this assignment presents, in effect, the same proposition as the tenth assignment, supra, and is overruled. Felton v. Clarkson, 103 Tenn. 457, 459, 53 S. W. 733.

## The Charge.

█ Defendant Edwards' twelfth assignment contains four subsections. The first two subsections assert that the Trial Court erred in charging the jury according to certain theories stated in these assignments, but no specific parts of the charge are set out in such manner that they can be identified by the Court as the particular instructions at which these assignments are directed.

█ The third and fourth subsections of the twelfth assignment assert that the Trial Court erred in not charging the jury on the subject of remote contributory negligence of plaintiff, and that the charge as a whole was, as to defendant Edwards, "meager and insufficient;" but it is not stated in these assignments that the Court was requested to supply such alleged omitted instructions. The twelfth assignment is overruled.

## Remaining Assignments of Edwards.

The thirteenth assignment of defendant Edwards contains five subsections which are, in substance, merely arguments offered in support of propositions presented by previous assignments of error that have been hereinbefore overruled.

█ The fifteenth (and last) assignment of defendant Edwards is that, "The Court erred in not granting defendant Edwards a new trial of this case, because he was entitled to a new trial on the grounds assigned by him in his motion for a new trial." This assignment is too general and indefinite to constitute a valid assignment of error. Thurman v. Bradford, 3 Tenn. Civ. App., 474, 3 Higgins 474; Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn. App., 170, 173; 2 Ency. Pl. & Prac., page 953. The thirteenth and fifteenth assignments, supra, are overruled.

## Proof of Ordinance.

█ Defendant Moudy's fourth assignment is that: "The Trial Court was in error in permitting to be read to the jury from a book not identified as the Minute Book of Springfield what purported to be the Speed Ordinance, and because the charter of Springfield provides that its Ordinances be proven in court by certified copy thereof."

The Ordinance in question was proved (over the objection of

defendants), by the testimony of the City Clerk of the city of Springfield, who presented and read into the record an Ordinance recorded in a book identified by him as the book kept and used by said city for that purpose. In other words, the Ordinance here in question was proved in the manner held to be proper by the Court in Rutherford v. Swink, 90 Tenn., 152, 16 S. W., 76; but it is contended by defendant Moudy that an exclusive method for proving such ordinances is provided by the Charter of the city of Springfield (Private Acts of 1927, Vol. 1, chapter 158), in which, by the last paragraph of section 30 (page 367), it is provided that the Commissioners of the City of Springfield "shall cause to be kept by the City Clerk, and it shall be his duty to keep a record of all business transacted by them, and of all laws and ordinances passed by them, at any and all regular and special sessions; said records to be kept at all times at the city hall subject to the inspection of the public. And a copy of such records duly certified by said City Clerk shall be competent evidence in all the courts of this State."

We do not agree to the contention of defendant Moudy thus made. We are of the opinion that the provision making such certified copies evidence, etc., was merely cumulative, and was designed as a convenient method to be used where the original record was not readily available. Defendant Moudy's fourth assignment of error is overruled.

## Was the Verdict Excessive?

Defendant Moudy's seventh (and last) assignment of error is that: "The verdict shows upon its face that it was based upon sympathy for an injured woman, and not upon the facts of the case, and the verdict, from its amount, showed passion, prejudice and caprice on the part of the jury."

We assume that this was intended as an assignment that the verdict was so excessive as to show passion, prejudice and caprice on the part of the jury.

All that is said on the brief for support of this assignment is that: "The soundest argument to sustain this is: had Evelyn Wilson been a boy in that automobile with these other two boys there would have been no recovery of any amount under the facts of this case."

The undisputed evidence describing the extremely serious, permanent and painful injuries suffered by the plaintiff—marring her features almost beyond recognition, crippling her for life and inflicting upon her extreme pain and suffering for many months—affords an entirely satisfactory reason for the omission from the brief and argument in support of Moudy's seventh assignment, and for the conclusion that counsel could see no support in the record

for a contention that, if compensation for the injuries suffered by plaintiff is the measure of the liability of the defendants, the verdict is excessive. Power Packing Co. v. Borum, 8 Tenn. App. 162, 182. Defendant Moudy's seventh assignment of error is overruled.

This disposes of all the assignments of error. They are all overruled and the judgment of the Circuit Court is affirmed. Judgment will be entered here in favor of plaintiff Evelyn Wilson and against defendants William Moudy and Ralph Edwards for $10,-000, with interest thereon from the date of the final judgment below (June 25, 1937), and for the costs of the cause, including the costs of the appeal.

Crownover and Felts, JJ., concur.