SMITH PACKING COMPANY and JESSE PAINTER,
v. GRACE ELLEN TINNIN. —340 S. W. (2d) 929.

Middle Section. July 1, 1960.

Certiorari Denied by Supreme Court October 7, 1960.

George H. Armistead, Jr., Charles L. Cornelius, Jr., Nashville, for plaintiffs in error.

Jack Norman, Nashville, for defendant in error.

I

SHRIVER, J.   The parties will be referred to as they appeared in the Court below.

This is a suit for $100,000 damages brought by plaintiff, Grace Ellen Tinnin, against the defendants Smith

Packing Company and Jesse Painter for the death of Jake Tinnin, husband of plaintiff, who was killed when a truck belonging to the defendant Packing Company and operated by an employee, Jesse Painter, backed into the deceased husband of plaintiff, pinning him against a loading platform and thus crushing him to death.

The case was tried in the Second Circuit Court of Davidson County before the Honorable Byrd Douglas and a jury and resulted in a verdict and judgment in favor of the plaintiff for $25,000, from which judgment the defendants, after their motion for a new trial was overruled, prefected their appeal in error to this Court and have assigned errors.

## II

It was admitted that the truck in question was owned by the defendant and was being operated on its business by an employee at the time of the accident.

The declaration is in four counts, the first count being based on common-law negligence. The second count alleges violation of certain city ordinances dealing with backing vehicles and reckless driving. The third count is based on an alleged violation of the statutes prescribing limitations on backing. The fourth count is based on alleged violations of statutory provisions dealing with the duty of motorists to pedestrians, defining reckless driving, and setting forth requirements for lighting devices such as backup lights, reflectors, rear view mirrors, etc.

The defendants filed a plea of the general issue.

The deceased, Jake Tinnin, was a livestock dealer and farmer 68 years of age. He weighed about 200 to 210

pounds and was blind in one eye. He was killed about ten to'clock A. M. on November 24, 1958, when crushed against a loading platform on the premises of the defendant Smith Packing Company, which platform was located about 18 feet east of the sidewalk along Third Avenue North, near the Stock Yards in Nashville. After the truck was moved following the accident, the body of the deceased was found lying in the passageway leading from the street to the loading platform and was about three and a half or four feet west of the platform. The premises of the defendant Packing Company are located at 807 Third Avenue North.

It is shown that the alley or passage which led from the open sidewalk on Third Avenue, No., to the loading platform of defendant was left open in order that trucks could move in and out in loading and unloading livestock. Said passage was 10 feet wide and about 18 feet long.

One one side of said passage or driveway was the wall of the building occupied by Smith Packing Company, while on the other side was a wall made of large posts and slats of lumber separating the said passage from cattle or stock pens. At the end of same and away from the sidewalk was the loading platform in question, beside which was a gate leading on into the area behind the loading platform, which gate was shown by the proof to be closed at the time the accident occurred.

The truck in question was 7½ feet wide, thus leaving a total space on both sides of the truck between the bed thereof and the walls on either side of 2½ feet so that if the truck were equally distant from both walls there would be about 15 inches of space on each side, but if the truck were not at an equal distance from both sides as,

of course, it was not, then, there was less space on one side and a little more space on the other side.

The passage into which the truck backed from the street was so situated that one could not see into it unless he were almost directly in front of the opening thereto. This is true because the building of Smith Packing Company was against the sidewalk on one side, while a wall of sheet metal along the inner edge of the sidewalk leading up to the entrance to this passage was on the other side, which effectively obstructed the view from the street unless one was so situated as to look straight into said passage.

At the time of the accident defendant Painter stated that he was hauling a load of hogs from the pens down on Harrison Street to the unloading chute on Third Avenue. He was driving a 1945 model truck. It had no light on the back of it and did not have a rear view mirror. The driver was in the truck alone, and it being Monday morning, the streets were crowded with other trucks which were parked along the curb on the east side of Third Avenue bumper to bumper. There was much activity and much noise with cattle bellowing, pigs squealing, stock traders hollering to each other and all of that. The driver pulled up past the passage in which he proposed to back and stopped his truck, whereupon a policeman at the corner held up traffic while he was backing into said passage. Another employee testified that he held up traffic on the other side, although the driver said that he did not know whether there was someone holding up traffic behind him or not. After pulling some 30 or 40 feet beyond the passage or driveway, he stated that he could not see into the passage but that he gauged his

backing operation by looking up at a telephone pole that stood just at the south entrance to same, and, by looking up at this telephone pole, he could gauge the position of his truck and back in in that manner. He stated that he was looking up at the telephone pole as he backed in. He heard someone holler but he thought they were in the engine room of Smith Packing Company so he backed all the way to the loading platform. He then jumped out of the truck to discover that he had crushed or run over Mr. Tinnin.

Mr. K. W. Tinnin, a brother of the deceased, testified that he had been with the deceased all morning, having come in with his brother on the truck, and that they had disposed of some cattle at the Stock Yards. He and his brother then went to a bank on Whiteside Avenue near the Stock Yards where his brother cashed a check. They then came back to Third Avenue North, turning south on said street proceeding toward town, or southwardly, toward Smith Packing Company. After proceeding some 25 or 30 feet southwardly on Third Avenue from the intersection of Whiteside Avenue, and reaching a point about that same distance from the entrance to the passage in question, the witness stopped to talk to some one that he knew, while his brother, Jake Tinnin, continued to walk on down the sidewalk in the direction of the alley or passage where he was killed. The witness said that the last time he saw his brother before the accident, he, the brother, was still on the sidewalk right close to the alley or passage where the loading platform of the Smith Packing Company is located. He stated that he had his back toward the alley in question when he heard some one holler and recognized his brother's voice. He stated, "He was just hollering, you could have heard him from

here to the stock yards, if it had been quiet''. He stated that when he looked, ''Well this here truck was coming in there real fast and getting in that alley, backing up'' —''It was backing up in that alley with a load of hogs, backing off from Third Avenue into this chute.''

He further stated that his brother kept hollering and that he naturally went up that way and when he got there the driver got out of the truck and they found his brother lying on his back in a dying condition. He quoted the driver as saying ''I run over some old man.''

Several ten and twenty dollar bills were scattered about on the ground around the injured man, indicating that he had the money in his hands at the time he was struck. The witness testified that the gate at the back end of the alley or passage was closed at the time he found his injured brother.

He further testified that the stockyard fence on the side of the alleyway next to the pens was about ten feet high and there is a brick wall on the other side. He stated that the alleyway was used chiefly to drive stock through but that people walked through there and there is a gate on the back side so that one could go through to the stock pens in the back, and that people generally used this area to get in to see the stock in the pens; that he has been familiar with it for twenty-five years or more.

### III

### Assignments of Error

Assignment No. 1 is as follows:

''The Trial Court erred in refusing to grant defendants' motion for peremptory instructions made at the conclusion of all the proof because there was

no evidence upon which a verdict against the defendants could have been based, and, more particularly, because: (1) plaintiff failed to prove her case substantially as alleged in her declaration; (2) there was no proof that defendants wilfully caused the death of the deceased in violation of the only duty they could have owed him as a trespasser or licensee; and (3) the deceased was guilty of contributory negligence as a matter of law.''

Assignment No. 2 complains of error in the charge to the jury which we will discuss hereinafter.

Assignments Nos. 3 and 4 complain of the refusal of special requests Nos. 1 and 4 made by the defendants.

Assignment No. 5 is a reiteration of assignments 1 and 4.

## IV

There is ample evidence of negligence on the part of the driver of the defendant's truck which might be related to one or more of the counts of the declaration.

In the first place, from the testimony and the physical facts shown by the record, it was not possible for the driver to have had a view into the passage into which he was backing his truck because of the position that he occupied in the cab of the truck at the time in question.

The brother of the deceased testified that the driver backed in at a very rapid speed. He backed across a sidewalk and into an enclosure where he was not in a position to see, and he had no rear view mirror through which he might have seen if he had possessed one. Furthermore, he stated that he was looking up at a telephone

pole and gauging the position of his truck by this pole as he backed in, instead of looking back where he was driving.

In the charge to the jury the Court quoted a City Ordinance that was proved in the record entitled, "Limitations on Backing" which provides that the driver of a vehicle except at designated places shall not back same into an intersection or over a crosswalk and shall not, in any event, or in any place, back a vehicle unless such movement can be made with safety.

He also quoted Code sec. 59-864 entitled "Limitations on backing" to the effect that "The driver of a vehicle shall not back the same unless such movements can be made with reasonable safety and without interfering with other traffic." And from Sec. 59-836 the following, "Notwithstanding the foregoing provisions of this chapter every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

The charge then included Sec. 59-905, with respect to the lights required on motor vehicles and Sec. 59-921 providing that all trucks must be equipped with rear view mirrors and making it a misdemeanor to operate without such rear view mirror.

Thus, it is seen that the jury could have taken the view that the absence of the rear view mirrow as well as the backing of the truck across the sidewalk in the manner described in the proof was proximate negligence. Or the jury may have related their verdict to the common-

law negligence alleged in the declaration. Being a general verdict, if it may be related to a good count in the declaration it is the duty of this Court to so consider it. See Wilson v. Moudy, 22 Tenn. App. 356, at page 369, 123 S. W. (2d) 828.

But defendants insist that the evidence will not support the conclusion that the deceased was struck while on the sidewalk or public way and that it must be concluded from the proof that he was a trespasser or, at best, a licensee on defendant's property, so that defendant owed him no duty except to refrain from wilfully injuring him. Let's consider these propositions.

It is said by counsel for the defendants that the trial Judge erred in his charge because he referred to the plaintiff's declaration and theory of the case as claiming that the deceased was struck and killed by the defendant's truck while the deceased was on the sidewalk at or near the opening of the alley, and instructed the jury "It is for you to say and determine just how the facts are and whether or not the deceased was struck on the sidewalk, as alleged by the plaintiff, or struck while he was in the opening or the loading space."

As above indicated, counsel for defendant insist that the declaration alleges that the deceased was on the property of defendant Smith Packing Company when he was struck and, furthermore, that there is no proof that he was struck on the sidewalk.

We have read the declaration with considerable care and we think that a reasonable interpretation thereof is that it alleges that the deceased was on the sidewalk or in the alleyway when he was struck and that if he was in the alleyway or passage it was because he was forced

into said alleyway and trapped therein by the movement of the truck in backing across the sidewalk where the plaintiff was located.

For example, the declaration alleges that defendant, Painter, failed to give plaintiff's intestate any notice of the fact that said truck was being back from the street across the sidewalk and into the area by any alarm or signal; that he failed, refused and neglected to look back before backing the heavy truck across the sidewalk and into the area, *to see if he could back his truck without injuring plaintiff's intestate or other persons lawfully using said sidewalk or unloading area* and that defendant carelessly, negligently and unlawfully backed said truck from the street across said sidewalk and into said area notwithstanding the fact that plaintiff's intestate was in full view and could have been seen by defendant, Painter, through the exercise of ordinary care and caution.

As hereinabove indicated, he could not have been in full view from the position occupied by the driver of the truck, unless he had been on the sidewalk rather than in the alleyway.

It is further averred that the deceased was trapped by the movement of the truck and forced to the rear of the area where he was crushed to death, in spite of his hollering and shouting to the defendant Painter to stop. It is further alleged,

"And that the defendant Jesse Painter, thus backed said truck across said sidewalk and into said area without looking back to see that he could back into said area with safety and without making sure that he would not back into your plaintiff's intestate

or other persons standing or located on said sidewalk or in said area."

It is further complained that the Court charged the jury that if they found that he was struck on the sidewalk he would not be a trespasser in any event but if they should find that he was struck within the limits of the loading dock, then it was for the jury to determine whether or not he was a trespasser, the Court went on to charge:

"If you should find that he was not a trespasser even though the deceased was within the loading dock when struck, the negligence as it applied to the driver of the truck, Painter, would mean the failure on his part to exercise ordinary care."

And he further charged that the negligence described in the charge would apply to the driver in the event the jury found that Mr. Tinnin was not a trespasser.

The defendants insist that the Court should have charged that if the deceased was found to be a licensee, that is, on the premises without the permission of the defendant packing company, express or implied, defendant could be held liable for wilful negligence only, and their special request No. 1 is to that effect.

We do not regard the language of the special request as being exactly accurate and the Judge was, therefore, justified in refusing the same. It is to be noted that the text authorities describe the status of a licensee and a trespasser as being the same insofar as the law of negligence is concerned.

In 20 R. C. L., page 57, under the title of "Negligence" it is said:

"Persons Not Invited: Trespassers: Licensees—
The rule frequently has been stated that the owner or
occupier of land owes no duty to keep his premises
safe in behalf of trespassers, idlers, intruders, or
others who come thereon without right or invitation.

\*　　\*　　\*　　\*　　\*　　\*

"No distinction is to be drawn, according to the
general use of terms, between persons coming with-
in the description of 'Licensees' and those who are
trespassers. Doubtless, for some purposes a licensee
has greater rights than a trespasser, but in this sit-
uation they are upon an equality. The obligation
owed to all such persons as are upon the premises
without right is the same; merely not wilfully and
intentionally to injure them, or—as it sometimes is
expressed—not to injure them after becoming aware
of their presence."

We think the language of the Court's charge dealing
with the question of the status of deceased as a possible
trespasser or licensee, although he did not use the latter
term, fairly presented the issue to the jury.

Assignment No. 4, which complains of the failure to
grant special request No. 4, that the Court charge the
jury that plaintiff in her declaration does not allege that
the deceased was on the sidewalk but rather that he was
at or near the inner area of the loading dock immediately
to the east of the edge of the sidewalk, was properly re-
fused for the reasons hereinabove discussed.

Thus, it seems to us that there was no reversible error
in the charge of the trial Judge nor in his refusal to grant
the special requests set forth in the assignments.

Giving the plaintiff the benefit of all the evidence in her behalf and all reasonable inferences to be drawn therefrom, we think it cannot be said that there is no evidence to support the jury's verdict as related to the declaration. The jury may have found that the deceased was walking along the sidewalk where he was shown to be just before this accident happened and when the truck started backing across the sidewalk he may have retreated into the alley and, thus, found himself trapped. Being a large man weighing 200 to 210 pounds he may have seen no means of escape and, without reacting quickly to the possibility of falling to the ground where he might not have been killed, he backed up and began shouting, hoping that the truck would stop but it failed to do so, even though the driver heard the shouts.

The evidence on the part of the witness Sweeney, who said that the deceased had been in this passage three times previously that day and had been put out by him was evidently not believed at all by the jury. And we think from reading this proof that the jury was justified in rejecting his testimony and accepting that of the brother of deceased who said that he had been with the deceased all morning and they had not been in that particular area before on that day.

The assignments of error must be overruled and the judgment of the trial Court affirmed.

Affirmed.

Hickerson and Humphreys, JJ., concur.